**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

CHELSEY HAYES, a minor by and through her guardian ad litem,
<br>*Plaintiff-Appellant*,

v.

COUNTY OF SAN DIEGO, DBA San Diego County Sheriff's Department; SUE GEER; MIKE KING,
<br>*Defendants-Appellees*.

</td>
<td>

No. 09-55644

D.C. No.
3:07-cv-01738-
DMS-JMA

ORDER
DISSOLVING
STAY and
OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
June 9, 2010—Pasadena, California

Filed December 2, 2013

Before: Alfred T. Goodwin and Johnnie B. Rawlinson,
Circuit Judges, and Algenon L. Marbley, District Judge.[*]

---

[*] The Honorable Algenon L. Marbley, District Judge for the U.S. District Court for the Southern District of Ohio, sitting by designation.

Order;
Opinion by Judge Goodwin;
Partial Concurrence and Partial Dissent by Judge
Rawlinson

**SUMMARY**[**]

**Civil Rights**

The panel dissolved a previously entered stay and affirmed in part and reversed in part the district court's summary judgment and remanded in an action brought under 42 U.S.C. § 1983 and state law in which plaintiff alleged violations of her deceased father's Fourth Amendment rights and her own Fourteenth Amendment rights after Sheriff's deputies shot and killed the father during a response to a domestic disturbance call.

The panel reversed the district court's finding that plaintiff had standing to assert survival claims related to her father's Fourth Amendment rights, noting that plaintiff failed to allege that she was her father's personal representative or successor in interest. The panel remanded for further proceedings on that issue, including whether plaintiff had standing to assert a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the County on this basis.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the summary judgment in favor of defendants on plaintiff's substantive due process claim under the Fourteenth Amendment. The panel held that in determining whether the deputies' actions shocked the conscience, the district court correctly applied a purpose-to-harm standard based on the deputies' snap decision that the father represented an immediate threat because he had a knife in his hand and was walking forward. The panel held that there was no evidence that the deputies fired their weapons for any purpose other than self-defense. Because the panel agreed that there was no violation of plaintiff's rights under the Fourteenth Amendment, it affirmed summary judgment to the County as to any *Monell* claim made on this basis.

The panel reversed the summary judgment regarding plaintiff's negligent wrongful death claim and remanded for further proceedings on this claim. The panel held that seen in the light most favorable to plaintiff, reasonable jurors could conclude that the deputies' use of deadly force was not objectively reasonable and that under California law, their duty to act reasonably extended to their pre-shooting conduct.

Concurring in part and dissenting in part, Judge Rawlinson stated that she agreed that plaintiff failed to adequately support her substantive due process claim. Judge Rawlinson disagreed with the balance of the majority opinion because in her view the record did not raise a material issue of fact regarding the amount of force used in this case. She would therefore affirm in its entirety the district court's entry of summary judgment in favor of the defendants.

## COUNSEL

Alvin M. Gomez, The Gomez Law Group, San Diego, California, for Plaintiff-Appellant.

Morris G. Hill, Senior Deputy, and John J. Sansone, County Counsel, County of San Diego, San Diego, California, for Defendants-Appellees.

## ORDER

The stay in this matter is **DISSOLVED**, and an opinion is filed concurrently with this order.[1]

## OPINION

GOODWIN, Circuit Judge:

On the night of September 17, 2006, San Diego County Sheriff's Deputies Mike King and Sue Geer shot and killed

---

[1] In our original opinion, we affirmed the district court in part and reversed in part, devoting a significant portion of our analysis to Appellant's negligent wrongful death claim. *Hayes v. Cnty. of San Diego*, 638 F.3d 688, 690, 694–701 (9th Cir. 2011). After the Appellees requested that we certify an issue underlying that claim to the California Supreme Court, we granted the request, withdrew our opinion, resubmitted the case, and stayed proceedings pending that court's final action. *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 868, 873 (9th Cir. 2011). Because the California Supreme Court has now completed its final action in the matter, *Hayes v. Cnty. of San Diego*, 305 P.3d 252 (Cal. 2013), we dissolve the stay and enter this opinion.

Shane Hayes inside his home. After the incident, Hayes's minor daughter, Chelsey Hayes, sued the deputies and the County of San Diego and asserted multiple federal claims, as well as state claims for negligent wrongful death and negligent hiring, training, and supervision. The district court granted summary judgment to the deputies and the County regarding all claims. We affirm in part, reverse in part, and remand.

## I. FACTUAL BACKGROUND

Deputy King arrived at Hayes's residence at 9:12 p.m. in response to a domestic disturbance call from a neighbor who had heard screaming coming from the house. Geri Neill, Hayes's girlfriend and the owner of the house, spoke with Deputy King at the front door. During a three-minute conversation, Neill advised Deputy King that she and Hayes had been arguing about his attempt that night to commit suicide by inhaling exhaust fumes from his car. She told Deputy King that there had not been a physical altercation between them, and she was instead concerned about Hayes harming himself, indicating that he had attempted to do so on prior occasions. Deputy King did not ask Neill about the manner of Hayes's prior suicide attempts and was unaware that he had previously stabbed himself with a knife. Although Neill advised Deputy King that there were no guns in the house, she made no indication that Hayes might be armed with a knife.

At 9:16 p.m., Deputy Geer arrived at the scene, and Deputy King advised her that there was a subject inside the house who was potentially suicidal. Based on the concern that Hayes might harm himself, the deputies decided to enter the house to check on Hayes's welfare, a process Deputy

King described as seeing whether Hayes could "physically or mentally care" for himself. While Neill later stated that Hayes had been drinking heavily that night, Deputy King had not asked Neill whether Hayes was under the influence of drugs or alcohol. Although the deputies had been sent a notification that Hayes was intoxicated, neither deputy was aware of this information before entering the house. Additionally, the deputies had not checked whether there had been previous calls to the residence, and they were unaware that Hayes had been taken into protective custody four months earlier in connection with his suicide attempt involving a knife.

Upon entry, both deputies had their guns holstered. Deputy King was also carrying a Taser. While moving in the dimly lit house, Deputy King advanced ahead of Deputy Geer and was using his sixteen-inch flashlight, which he had been trained to use as an impact weapon.

Once in the living room, Deputy King saw Hayes in an adjacent kitchen area, approximately eight feet away from him. Because Hayes's right hand was behind his back when Deputy King first saw him, Deputy King testified that he ordered Hayes to "show me his hands." While taking one to two steps towards Deputy King, Hayes raised both his hands to approximately shoulder level, revealing a large knife pointed tip down in his right hand. Believing that Hayes represented a threat to his safety, Deputy King immediately drew his gun and fired two shots at Hayes, striking him while he stood roughly six to eight feet away. Deputy Geer simultaneously pulled her gun as well, firing two additional rounds at Hayes.

Deputy King testified that only four seconds elapsed between the time he ordered Hayes to show his hands and the time the first shot was fired. When asked why he believed Hayes was going to continue at him with the knife, Deputy King testified: "Because he wasn't stopping." Neither deputy had ordered Hayes to stop. While stating that such a command would have only taken "a split second," Deputy King testified that "I didn't believe I had any time."

Neill witnessed the shooting from behind Deputy Geer and testified that Hayes was walking towards the deputies with the knife raised at the time the shots were fired. She stated, however, that Hayes was not "charging" at the officers and had a "clueless" expression on his face at the time, which she described as "like nothing's working upstairs." Neill testified that just before the shooting, Hayes had said to the officers: "You want to take me to jail or you want to take me to prison, go ahead."

## II. DISCUSSION

Hayes's minor daughter, Chelsey Hayes, filed suit against the deputies and the County of San Diego, alleging claims under 42 U.S.C. § 1983 for alleged violations of her deceased father's Fourth Amendment rights and her own Fourteenth Amendment rights. The complaint also included state law claims for negligent wrongful death and negligent hiring, training, and supervision by the County. While finding Chelsey Hayes had standing to assert survival claims, the district court nonetheless granted defendants summary judgment on all her causes of action.

Chelsey Hayes appeals the district court's grant of summary judgment, except for her claim of negligent hiring,

training and supervision by the County.[2]   In responding, Appellees contest the district court's finding that Chelsey Hayes has standing to assert survival claims based on violations of her father's constitutional rights.

## A.  STANDARD OF REVIEW

We review issues of standing *de novo*.  *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003).  We review the district court's interpretation of state law and its grant of summary judgment *de novo*.  *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 728, 745–46 (9th Cir. 2013). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## B.  APPLICATION

### 1.  Standing to Assert Survival Claims

"In § 1983 actions, . . . the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action.  The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a

---

[2] Appellant's opening and reply briefs fail to address the district court's dismissal of her negligent hiring, training and supervision claim, and we conclude that any appeal of that dismissal is waived.  *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir. 1996) (issues not specifically raised and argued in a party's opening brief are waived).

survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (internal citation omitted).

In finding that Chelsey Hayes met California's statutory requirements to bring a survival action, the district court relied upon California Code of Civil Procedure § 377.60. The district court erred in doing so because section 377.60 relates to wrongful death actions that are based on personal injuries resulting from the death of another, not survival actions that are based on injuries incurred by the decedent. *See* CAL. CIV. PROC. CODE § 377.60 ("A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons . . . ."); *Schwarder v. United States*, 974 F.2d 1118, 1123 n.3 (9th Cir. 1992) ("[T]he cause of action granted by Section 377 to the heirs and personal representatives of a decedent is not derivative in character or a continuation or revival of a cause of action existing in the decedent before his death, but is an original and distinct cause of action granted to the heirs and personal representatives of the decedent to recover damages sustained by them by reason of the wrongful death of the decedent.") (quoting *Van Sickel v. United States*, 285 F.2d 87, 90 (9th Cir. 1960)); *see also Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994) ("In a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained. In a wrongful death action, by comparison, the decedent's dependents may only pursue claims for personal injuries they have suffered as a result of a wrongful death.").

California's statutory requirements for standing to bring a survival action are stated under California Code of Civil Procedure § 377.30: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . , and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." *See also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006) ("Where there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law . . . .") (citing CAL. CIV. PROC. CODE §§ 377.30, 377.32). While claiming she is the decedent's "sole surviving heir," Appellant fails to allege that she is her father's personal representative or successor in interest. Indeed, Appellant argues only that standing is appropriate under section 377.60, not section 377.30. There is no indication whether Appellant has filed the affidavit necessary under California law to commence a survival action as a decedent's successor in interest, *see* CAL. CIV. PROC. CODE § 377.32, or whether survival claims may now be time-barred if Appellant has failed to do so.

Because it is unclear on the present record whether Appellant has standing to assert survival claims based on her father's constitutional rights, we do not address the district court's further finding of qualified immunity in relation to the alleged Fourth A mendment violations. Accordingly, we remand this issue to the district court for a decision whether Chelsey Hayes has standing to assert survival claims based on alleged violations of her father's rights under the Fourth Amendment.

## 2.  Alleged Fourteenth Amendment Violations

This Circuit has recognized that a child has a constitutionally protected liberty interest under the Fourteenth Amendment in the "companionship and society" of her father. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Moreland*, 159 F.3d at 371. "Official conduct that 'shocks the conscience' in depriving [a child] of that interest is cognizable as a violation of due process." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). In determining whether excessive force shocks the conscience, the court must first ask "whether the circumstances are such that actual deliberation [by the officer] is practical." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Moreland*, 159 F.3d at 372 (internal quotation marks omitted)). Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. *Wilkinson*, 610 F.3d at 554.

Here, the district court correctly applied the purpose-to-harm standard based on the deputies' snap decision that Hayes represented an immediate threat. Neill had advised Deputy King that there were no guns in the house, and the deputies entered the residence with their guns holstered, apparently not expecting a violent confrontation with Hayes.[3]

---

[3] We note that Appellant makes no argument that this warrantless entry itself violated Hayes's Fourth Amendment rights. Indeed, such an argument would likely be unavailing in light of the emergency exception to the warrant requirement. *See United States v. Russell*, 436 F.3d 1086,

After Deputy King ordered Hayes to show his hands, Hayes raised both his hands to approximately shoulder level, revealing a large knife pointed tip down in his right hand. Believing that Hayes represented a threat, both deputies immediately drew their guns and fired at Hayes.

The decision to use deadly force against Hayes was a snap judgment based on the unexpected appearance of a knife in his hand. Deputy King testified that only four seconds elapsed between the time he ordered Hayes to show his hands and the time the first shot was fired, stating that he did not feel there was time to give Hayes a warning before firing. Appellant argues that the deputies could have potentially avoided the incident by obtaining more information about Hayes or requesting a psychiatric emergency response team ("PERT") before entering the house, but that option expired when the deputies entered the house. The decision to employ deadly force in reaction to seeing the knife was sudden and did not include deliberation. *Cf. Wilkinson*, 610 F.3d at 554 (finding purpose-to-harm standard appropriate where "[w]ithin a matter of seconds, the situation evolved from a car chase to a situation involving an accelerating vehicle in dangerously close proximity to officers on foot"); *Porter*, 546 F.3d at 1139 (finding actual deliberation was not practical where a five-minute altercation between the officers and victim evolved quickly and forced the officers to make "repeated split-second decisions") (internal quotation marks omitted). Accordingly, the purpose-to-harm standard is appropriate in this case.

---

1094 (9th Cir. 2006) ("At issue in this case is the emergency exception to the warrant requirement, which permits a warrantless search when officers 'reasonably believe that a person within is in need of immediate aid.'") (quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)).

Appellant makes no claim that the deputies acted with a purpose to harm unrelated to the legitimate law-enforcement objective of defending themselves, arguing only that the deliberate-indifference standard should have been applied. Indeed, there is no evidence that the deputies fired their weapons for any purpose other than self-defense. Accordingly, Appellant failed to support her substantive due process claim. *See Wilkinson*, 610 F.3d at 554–55. We therefore affirm the summary judgment regarding the § 1983 claim based on a violation of Appellant's rights under the Fourteenth Amendment.

### 3. *Monell* Claims of Municipal Liability under § 1983

Finding no violation of either Hayes's or Appellant's constitutional rights, the district court granted the County summary judgment on all claims of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Because we agree that there was no violation of Appellant's rights under the Fourteenth Amendment, we affirm summary judgment to the County as to any *Monell* claim made on this basis. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835–36 (9th Cir. 1996) (noting that a constitutional violation is required to support *Monell* liability).

As noted, however, we have declined to address the district court's decision regarding alleged violations of Hayes's Fourth Amendment rights because it is unclear that Appellant has standing to assert such survival claims. Accordingly, we remand Appellant's *Monell* claim based on alleged violations of her father's constitutional rights, permitting the district court to decide whether Chelsey Hayes

has standing to assert survival claims based on alleged violations of her father's rights under the Fourth Amendment.

### 4.  Negligent Wrongful Death

We then turn to Appellant's negligent wrongful death claim.   To support a claim of negligent wrongful death against law enforcement officers, a plaintiff must establish the standard elements of negligence: defendants owed a duty of care; defendants breached their duty; and defendants' breach caused plaintiff's injury.  *See Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 344 (1990).  The district court considered these elements and provided two reasons for rejecting Plaintiff's negligent wrongful death claim.

First, the court held that the deputies owed a duty of reasonable care in deciding to use deadly force, but concluded that their use of force was objectively reasonable and therefore not negligent as a matter of law.

Second, the court addressed Appellant's contention that: (1) the deputies also owed a duty of reasonable care with respect to their conduct and decisions before the shooting; and (2) they breached their duty by failing to gather all potentially available information about Hayes or to request PERT assistance before confronting him.  The district court explained that the California Supreme Court had not clearly addressed a peace officer's duty of reasonable care in pre-shooting conduct; correctly proceeded to consider the then-governing intermediate appellate authorities, *see Katz v. Children's Hosp.*, 28 F.3d 1520, 1528–29 (9th Cir. 1994); *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982); and concluded that the deputies owed no duty of reasonable care regarding their pre-shooting conduct.

Considering the evidence in the light most favorable to Appellant, we disagree with the district court's first conclusion. And, with the benefit of the California Supreme Court's response to our certified question, we must reject the district court's second conclusion. *See Hayes v. Cnty. of San Diego* (*Hayes I*), 658 F.3d 867, 868 (9th Cir. 2011) (certifying question to California Supreme Court and requesting decision); *Hayes v. Cnty. of San Diego* (*Hayes II*), 305 P.3d 252 (Cal. 2013) (responding to request); *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991) (when interpreting state law, a federal court is bound by the decision of the state's highest court). We therefore reverse and remand for further proceedings regarding Appellant's negligent wrongful death claim.

**A. Viewing the evidence in the light most favorable to Appellant, reasonable jurors could conclude that the deputies' use of deadly force was not objectively reasonable.**

"While breach of duty and proximate cause normally present factual questions, the existence of a legal duty in a given factual situation is a question of law for the courts to determine." *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal. App. 4th 1830, 1838 (1993) (quoting *Andrews v. Wells*, 204 Cal. App. 3d 533, 538 (1988)) (internal quotation marks omitted).

The California Supreme Court has held that "an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect," and that "police officers have a duty to use reasonable care in employing deadly force." *Munoz v. Olin*, 24 Cal.3d 629, 634 (1979) (citing *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 586 (1970)); *Munoz v. City of Union City*, 120 Cal. App. 4th

1077, 1099–1100 (2004) (citing *Grudt*, 2 Cal.3d 575 and *Munoz*, 24 Cal.3d 629). Claims of excessive force under California law are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims. *See In re Joseph F.*, 85 Cal. App. 4th 975, 989 (2000) (citing *Martinez v. Cnty. of Los Angeles*, 47 Cal. App. 4th 334, 343 (1996)); *see also Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998) (noting that 42 U.S.C. § 1983 is "the federal counterpart of state battery or wrongful death actions"); *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 n.11 (2009) ("Because federal civil rights claims of excessive use of force are the federal counterpart to state battery and wrongful death claims, federal cases are instructive in this area.").

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). To do so, a court must pay "careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* We also consider, under the totality of the circumstances, the "quantum of force" used, *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007), the availability of less severe alternatives, *id.* at 1054, and the suspect's mental and emotional state, *see Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001). All determinations of unreasonable force, however, "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the

amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Although we view the evidence in the light most favorable to Appellant in reviewing summary judgment, *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998), we can only consider the circumstances of which Deputies King and Geer were aware when they employed deadly force. *See Graham*, 490 U.S. at 396; *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 n.8 (9th Cir. 2011) (*Graham* teaches that "[w]e cannot consider evidence of which the officers were unaware"). Accordingly, when analyzing the objective reasonableness of the officers' conduct under *Graham*, we cannot consider the fact that Hayes was intoxicated or that he had previously used a knife in harming himself.

In considering the first and third factors under *Graham*, it is undisputed that Hayes had committed no crime, and there is no evidence suggesting that Hayes was "actively resisting arrest or attempting to evade arrest." *Graham*, 490 U.S. at 396. Taking the evidence in the light most favorable to Appellant, Hayes appears to have been complying with Deputy King's order to show his hands when Hayes raised his hands and revealed the knife. His statement that the deputies could take him to jail further suggests his compliance at the time. Although Hayes was walking towards the deputies, he was not charging them, and had not been ordered to stop. He had committed no crime and had followed all orders from the deputies at the time he was shot.[4]

---

[4] In *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985), the Supreme Court stated a probable cause standard for determining whether a fleeing suspect poses a threat of serious physical harm to officers or others. Although Hayes seemed to believe he was going to be arrested, he was not

The central issue is whether it was objectively reasonable under the circumstances for the deputies to believe that Hayes posed an immediate threat to their safety, warranting the immediate use of deadly force, rather than less severe alternatives—such as an order to stop, an order to drop the knife, or a warning that deadly force would be used if Hayes came any closer to the deputies.[5] *See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc) (noting that the second factor under *Graham* is the "most important") (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). Based on the undisputed fact that Hayes was moving toward Deputy King with the knife raised, the district court found as a matter of law that the deputies' use of deadly force was objectively reasonable due to the threat to the officers' safety.

Considering all of the evidence in the light most favorable to the Appellant, we cannot agree. "[T]he mere fact that a suspect possesses a weapon does not justify deadly force." *Haugen v. Brosseau*, 351 F.3d 372, 381 (9th Cir. 2003), *rev'd on other grounds*, 543 U.S. 194 (2004) (citing *Harris v. Roderick*, 126 F.3d 1189, 1202 (9th Cir. 1997) (holding, in the Ruby Ridge civil case, that the FBI's directive to kill any armed adult male was constitutionally unreasonable even though a United States Marshal had already been shot and killed by one of the males)); *Glenn*, 673 F.3d at 872 (suspect's mere "possession of a knife" is "not dispositive"

---

suspected of a crime by the deputies and was not apparently attempting to evade them. Accordingly, this standard would not apply here.

[5] While Deputy King was carrying a Taser, he testified that he believed it would take between ten to fifteen seconds to unholster and use the device, indicating that the Taser was not a viable alternative under the circumstances.

on immediate-threat issue); *Curnow*, 952 F.2d at 324–25 (holding that deadly force was unreasonable where the suspect possessed a gun but was not pointing it at the officers and was not facing the officers when they shot). Accordingly, Hayes's unexpected possession of the knife alone—particularly when he had committed no crime and was confronted inside his own home—was not sufficient reason for the officers to employ deadly force.

On the other hand, threatening an officer with a weapon does justify the use of deadly force. *See, e.g.*, *Smith*, 394 F.3d at 704 (recognizing that "where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force"); *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1168 (9th Cir. 1996) (holding deadly force reasonable where suspect, who was behaving erratically, swung a knife at an officer), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997).[6] There is no clear evidence, however, that Hayes

---

[6] In suggesting that Deputy King had "probable cause to believe that his life was in danger," the partial dissent mistakenly equates the facts found in *Reynolds* with those here, ignoring the significant differences between the two situations. In *Reynolds*, a man was "behaving in a strange manner" outside a gas station, and wielding a knife. 84 F.3d at 1164. An officer ordered the man to drop the knife multiple times, but when the officer attempted to restrain him, the man made a "sudden" swing at the officer with the knife. *Id.* at 1164–65. This court found the suspect's actions constituted a direct threat to the officer's life, justifying the officer's use of deadly force. *Id.* at 1170. Here, the evidence suggesting that Hayes presented an immediate threat to officer safety is unclear, raising a greater question regarding the reasonableness of the officers' actions, as compared to the officer in *Reynolds*. On this record, Hayes was standing in his own kitchen, eight feet away from Deputy King; Hayes was not suspected of any crime; he was not ordered to drop the knife; he did not swing the knife at Deputy King; and he followed all of the deputies'

was threatening the officers with the knife here. Before they entered the house, the deputies were told that Hayes had threatened to harm himself; they were not told that he had threatened to harm others. Nor did the deputies witness Hayes acting erratically with the knife. *Cf. Reynolds*, 84 F.3d at 1168 (finding that it was reasonable for an officer to attempt to restrain a suspect where the suspect possessed a knife and was acting erratically because the suspect was perceived as a threat by others in the area).

Deputy King indicated that it was Hayes's movement towards him that caused him to believe Hayes was an immediate threat. "[A] simple statement by an officer that he fears for his safety or the safety of others is not enough [however]; there must be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281. Neill stated that Hayes was not charging Deputy King and described Hayes's expression as "clueless" when walking towards the deputies. As noted, Hayes had not been told to stop, nor had he been given any indication that his actions were perceived as a threat. Further, Hayes was still six to eight feet away from Deputy King at the time he was shot. Accordingly, the

---

orders before the shooting. We agree with the partial dissent that "the events in this case unfolded rapidly within a dimly lit, confined space." But the lack of clarity in these circumstances does not cause us to simply adopt the officers' explanation of their actions. To the contrary, a court must determine on summary judgment whether there is any issue of material fact that would contradict an otherwise reasonable justification for the use of force. In finding that there remain genuine issues of material fact regarding whether Hayes represented an immediate threat to officer safety, we do not merely engage in a 20/20 hindsight analysis, as the partial dissent suggests. Instead, we acknowledge the court's limited role at the summary judgment stage in determining objective reasonableness under *Graham*.

present evidence does not clearly establish that Hayes was threatening the deputies with the knife.

Finally, it is significant that Hayes was given no warning before the deputies shot him. As noted by the court in *Deorle:*

> The absence of a warning or an order to halt is also a factor that influences our decision. Shooting a person who is making a disturbance because he walks in the direction of an officer at a steady gait with a can or bottle in his hand is clearly not objectively reasonable. Certainly it is not objectively reasonable to do so when the officer neither orders the individual to stop nor to drop the can or bottle, and does not even warn him that he will be fired upon if he fails to halt. Appropriate warnings comport with actual police practice. . . . We do not hold, however, that warnings are required whenever less than deadly force is employed. Rather, we simply determine that such warnings should be given, when feasible, if the use of force may result in serious injury, and that the giving of a warning or the failure to do so is a factor to be considered in applying the *Graham* balancing test.

*Id.* at 1283–84; *see also Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012). The San Diego County Sheriff's Department Guidelines regarding use of force reflect the importance of warning a suspect before using deadly force: "In situations where any force used is capable of causing

serious injury or death, there is a requirement that, whenever feasible, the deputy must first warn the suspect that force will be used if there is not compliance." While estimating that such a warning would have taken only a "split second," Deputy King testified that he did not feel he had time to issue such a warning. According to Deputy King's own testimony, however, Hayes was still at least six feet away from him at the time he was shot. It is not clear that a warning in this situation was unfeasible.

The California Supreme Court has held that it is error for a trial court to remove the issue of negligence from a jury where the evidence most favorable to the plaintiff could support a view that the force used was unreasonable. *See Grudt*, 2 Cal.3d at 586–87 (holding the trial court erred in removing the issue of negligence from the jury where the evidence most favorable to the plaintiff could have supported a view that Grudt, driving in a high crime area late at night and hailed to stop by men in plain clothes, thought he was going to be robbed, tried to elude the robbers, and was then shot by the plainclothes officers when his car stopped at an intersection). Seen in the light most favorable to Appellant, Hayes was complying with Deputy King's order when he raised the knife and posed no clear threat at the time he was shot without warning. Accordingly, we reverse the district court's first conclusion: that the deputies' use of force was objectively reasonable as a matter of law.[7]

---

[7] We note that the district court did not address whether the deputies or the County would be entitled to statutory immunity under California law, and we decline to address this issue in the first instance here.

### B. Under California law, the deputies' duty to act reasonably when using deadly force extends to their pre-shooting conduct.

We also reverse the district court's second conclusion: that the deputies owed no duty of reasonable care with regard to their pre-shooting conduct.[8]

The California Supreme Court has responded to our certification order and clarified California's negligence doctrine in cases where, as here, a plaintiff attacks peace officers' "tactical conduct and decisions leading up to the use of deadly force." *Hayes II*, 305 P.3d at 253. According to *Hayes II*, the district court's conclusion below "overlooks the long-established principle of California negligence law that the reasonableness of a peace officer's conduct must be

---

[8] The partial dissent claims that the district court's opinion "touched all the bases laid out by the California Supreme Court" in *Hayes II*. We disagree.

The district court's opinion stated that "[o]n the facts of this case, Deputies King and Geer *owed no duty to Mr. Hayes* regarding their pre-shooting conduct." *District Court Opinion* at 13 (emphasis added). *Hayes II* is to the contrary. *See* 305 P.3d at 261 (Plaintiff's "fact-based theory" that preshooting conduct "caused [Hayes] to seek his own death at [the deputies'] hands" falls "within the totality of circumstances" underlying the "peace officers['] . . . duty to act reasonably when using deadly force.").

Furthermore, *Hayes II* expressly recognized that the California Supreme Court's holding was inconsistent with the district court's opinion. *Id.* at 257 ("[T]he federal district court ruled . . . that the sheriff's deputies owed plaintiff no duty of care with regard to their preshooting conduct . . . . That conclusion overlooks the long-established principle of California negligence law that the reasonableness of a peace officer's conduct must be determined in light of the totality of circumstances.").

determined in light of the totality of circumstances." *Id.* at 257. There is "no sound reason to divide plaintiff's cause of action . . . into a series of decisional moments . . . and then to permit plaintiff to litigate each decision in isolation, when each is part of a continuum of circumstances surrounding a single use of deadly force." *Id.* at 262, 256. Instead, under *Grudt*, an officer's preshooting conduct is properly "included in the totality of circumstances surrounding [his] use of deadly force, and *therefore the officer's duty to act reasonably when using deadly force extends to preshooting conduct*." *Id.* at 257 (emphasis added).[9]

Accordingly, while we acknowledge that the district court's summary judgment ruling "was undertaken at a time when the law . . . was unclear" and that the district court could not be "clairvoyant or prescient," we also recognize that after *Hayes II*, the law "is no longer uncertain." *Ewing v. Williams*, 596 F.2d 391, 397 (9th Cir. 1979). Consistent with our obligation to follow the authority of California's highest court, *see Joyner*, 940 F.2d at 1565, we conclude that the deputies' duty of reasonable care extended to their conduct before the shooting, and reverse the district court's conclusion to the contrary.

## III.  CONCLUSION

The circumstances of this case can be viewed in multiple ways: as "suicide by cop," as officers suddenly threatened with a deadly weapon, or as a depressed man simply holding

---

[9] The court also emphasized that the "reasonableness of the deputies' preshooting conduct should not be considered in isolation," but as part of the totality of the circumstances surrounding the fatal shooting of Hayes. *Hayes II*, 305 P.3d at 261–62.

a knife when confronted by law enforcement.  As with most excessive force claims, the correct determination of the circumstances here will require a careful balancing of the evidence and the inferences that can be made therefrom.  For just this reason, this court has stated on many occasions that summary judgment in excessive force cases should be granted sparingly, because the reasonableness of force used is ordinarily a question of fact for the jury.  *See, e.g.*, *Smith*, 394 F.3d at 701; *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citing multiple cases).

Consistent with that teaching, we reverse the summary judgment regarding Appellant's negligent wrongful death claim and remand for further proceedings on that claim.  We also reverse the district court's finding that Appellant has standing to assert survival claims related to her father's Fourth Amendment rights and remand for further proceedings on the issue, including whether Appellant has standing to assert a *Monell* claim against the County on this basis.

We affirm the summary judgment as to Appellant's § 1983 claim based on a violation of her rights under the Fourteenth Amendment, as well as the *Monell* claim stated against the County on the same basis.

**AFFIRMED in part, REVERSED in part, and REMANDED**.  No party to recover costs on this appeal.

RAWLINSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the Plaintiff failed to adequately support her substantive due process claim. I also agree that the district court properly granted summary judgment in favor of the Defendants. I therefore join Section II.B.2. of the majority opinion. However, I disagree with the balance of the majority opinion because the record does not raise a material issue of fact regarding the amount of force used in this case, even after applying the decision of the California Supreme Court. *See Hayes v. County of San Diego*, 305 P.3d 252 (Cal. 2013).

Before resolving the legal issues in this case, it is appropriate to focus on the facts and the circumstances the officers encountered upon arrival at the scene. The impetus for the officers' response was a call from a neighbor who reported hearing screaming from the house where the decedent Shane Hayes resided. Hayes' girlfriend advised Deputy King that she and Hayes had been arguing. When the two officers entered the residence, it was so dimly lit that Deputy King was forced to use his flashlight. Hayes was located approximately eight feet from Deputy King. When Deputy King ordered Hayes to show his hands, Hayes revealed a large knife in his raised right hand, with the tip pointed downward. At the same time, Hayes was steadily advancing toward Deputy King. Only four seconds elapsed between the time Deputy King ordered Hayes to show his hands and the shooting, with no cessation of Hayes' forward advance. Indeed, it is undisputed that Hayes continued to advance toward Deputy King with the knife raised. Hayes' girlfriend described Hayes as having a "clueless" expression on his face as he continued to advance. Deputy King testified

that he shot Hayes "[b]ecause [Hayes] wasn't stopping." At the hearing on the summary judgment motion filed by the County, the Plaintiff did not challenge the officers' testimony regarding the sequence of events. Her only challenge was to the location of the knife once Hayes fell to the floor upon being shot, which challenge did not raise a material issue of fact.

This case is similar to *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on a different ground in Acri v. Varian Associates*, 114 F.3d 999, 1000 (9th Cir. 1997). As in this case, the deceased in Reynolds "was behaving in a strange manner and wielded a knife . . ." *Id*. In *Reynolds*, we reiterated the United States Supreme Court's holding that the use of deadly force by a police officer is reasonable so long as the officer "has probable cause to believe that the [person against whom the force is used] poses a significant threat of death or serious physical injury to the officer . . ." *Id*. at 1167. We also noted the Supreme Court's caution that in making that determination, we must be ever mindful that what we view at our leisure with the perspective of 20–20 hindsight often occurs in rapid sequence. *See id*.

As commonly happens in deadly force cases, the events in this case unfolded rapidly within a dimly lit, confined space. By Hayes' girlfriend's account, Hayes kept coming toward Deputy King in a small space with an expression on his face "like nothing's working upstairs." Faced with a steadily advancing Hayes wielding a large knife, the officer had probable cause to believe that his life was in danger. *See Reynolds*, 84 F.3d at 1167. As our precedent makes clear, an officer need not wait for the assailant to strike a blow before acting to ensure his safety and the safety of others. *See Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (en banc)

("[W]here a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force.") (citations omitted); *see also Blanford v. Sacramento County*, 406 F.3d 1110, 1115–16 (9th Cir. 2005).

The majority opinion remands the case to the district court for a determination of whether the Plaintiff may maintain a survivorship action. However, in my view, regardless of whether Plaintiff may maintain an action, no excessive force was used by Deputy King. Rather than remanding the case to the district court, I would affirm the district court's ruling that no excessive force was used.

The opinion of the California Supreme Court does not alter my view of this case because that court simply reiterated our obligation to resolve the excessive force claim by reviewing the totality of the circumstances, rather than by dissecting the analysis into separate considerations of pre-shooting conduct and shooting conduct. *See Hayes*, 305 P.3d at 256–57 (explaining that the issue certified erroneously "focuse[d] in isolation on events that preceded the shooting" rather than considering those events as part of the "totality of circumstances"). "[T]he pre-shooting conduct is only relevant here to the extent it shows, as part of the totality of circumstances, that the shooting itself was negligent. . . ." *Id*. at 257. The California Supreme Court expressly disavowed any intent to resolve the issue of liability "on the facts presented." *Id*. at 254. Rather, it left that matter to "the federal courts [to resolve]." *Id*. However, the California Supreme Court expressly acknowledged that the "nation's high court has observed [that] the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 258 (quoting *Graham v. Connor*,

490 U.S. 386, 396 (1989)) (alteration and internal quotation marks omitted).

> In addition [under California law], as long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the most reasonable action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence.

*Id*. at 258 (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537–38 (2009)).

The California Supreme Court took care to eschew any "suggest[ion] that a particular preshooting protocol (such as a background check or consultation with psychiatric experts) is always required." *Id*. Instead, the court recognized that "[l]aw enforcement personnel have a degree of discretion as to how they choose to address a particular situation." *Id*. Finally, the California Supreme Court observed that summary judgment in favor of the defendants on the negligence claim would be appropriate if the district court, after viewing the facts in the light most favorable to the plaintiff, determined that "no reasonable juror could find negligence." *Id*. (citing *Hernandez v. City of Pomona*, 207 P.3d 506, 521 (Cal. 2009)).

In my view, the district court in its analysis touched all the bases laid out by the California Supreme Court. As the district court noted, the facts were undisputed. *See District*

*Court Opinion*, p. 9. Taking those undisputed facts, the district court analyzed the excessive force claim by "contemplat[ing] whether the *totality of circumstances*" justified the amount of force used. *Id.* (emphasis added). Although the district court stated that it need not consider the pre-shooting conduct in its analysis, it nevertheless addressed that conduct and found that inclusion of the pre-shooting circumstances would not change the outcome. *See id.* at n.3. Citing *Tennessee v. Garner*, 471 U.S. 1, 3 (1985), the district court concluded that under the totality of the factual circumstances, including the pre-shooting circumstances discussed in note 3, "it was objectively reasonable for the Deputies to conclude that Mr. Hayes posed a significant threat of death or serious physical injury to themselves or others. Accordingly, their use of deadly force was reasonable and did not violate the Fourth Amendment." *District Court Opinion*, p. 10.

The district court incorporated its reasoning regarding the Fourth Amendment excessive force claim into the state law negligence claim, after noting that the California negligence standard "mirrors the reasonableness inquiry under the Fourth Amendment." *Id.* at 11 (citing *Brown*, 171 Cal. App. 4th at 534). The district court concluded: "As set out above, Deputies King and Geer's use of deadly force did not violate the Fourth Amendment's reasonableness requirement. It necessarily follows that their use of deadly force was not negligent." *Id.* at 11.

I cannot imagine how or why the district court would proceed any differently on remand. Perhaps the discussion of the pre-shooting conduct would be lifted from the footnote and inserted into the text. But I am convinced that the outcome would not and should not change. On these

undisputed facts and considering the totality of the circumstances, the district court correctly concluded that no constitutional violation occurred.  I would affirm in its entirety the district court's entry of summary judgment in favor of the defendants.  I respectfully dissent.