CALLAHAN, Circuit Judge,
concurring in part, and dissenting in part:
I concur with the majority that the Patterson declaration should not have been struck, and that the officers are entitled to qualified immunity with respect to the Plaintiffs’ § 1983 claim.[1] However, I *423 would also affirm the district court’s grant of summary judgment with respect to the Plaintiffs’ negligence claim.
Like federal courts evaluating Fourth Amendment excessive force claims, California also views “‘reasonableness’ of a particular use of force ... from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Hayes v. County of San Diego, 57 Cal.4th 622, 160 Cal.Rptr.3d 684, 305 P.3d 252, 258 (2013) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). “To do so, a court must pay ‘careful attention to the facts and circumstances of each particular ease, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.’ ” Hayes v. Cty. of San Diego, 736 F.3d 1223, 1232 (9th Cir.2013) (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865). Courts also consider “under the totality of the circumstances, the quantum of force used, the availability of less severe alternatives, and the suspect’s mental and emotional state.” Id. (internal quotation marks and citations omitted). “All determinations of unreasonable force, however, must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Id. (internal quotation marks omitted). The “most important” consideration is “whether the suspect poses an immediate threat to the safety of officers or others.” Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir.2005) (en banc) (quoting Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir.1994)).
Applying the considérations articulated above, the officers’ conduct here was not negligent, even considering the pre-shoot-ing conduct, because Ms. Vasselin posed an immediate, deadly threat to the officers. She unexpectedly appeared naked pointing a shotgun in the officers’ direction. She ignored the officers’ repeated instructions to drop the gun, and instead proceeded to advance towards them. The time from when Ms. Vasselin appeared with the shotgun to the time when the officers fired was about one minute. Thus, the officers did not have time to consider any less severe alternative means to protect themselves from the danger posed.
Plaintiffs, however, contend there were alternative means available to the officers to avoid or diffuse the situation including having a better plan to communicate, providing more time for Ms. Vasselin to comply, standing in the open instead of hiding behind pillars, keeping their weapons holstered, contacting the residents by phone, waiting to approach the house until the morning, illuminating the porch, and identifying themselves as police clearly. But officers are not required to choose the “‘most reasonable’ action or the conduct that is the least likely to cause harm,” so long as their conduct falls “within the range of conduct that is reasonable under the circumstances.” Hayes, 160 Cal.Rptr.3d 684, 305 P.3d at 258 (quoting Brown v. Ransweiler, 171 Cal.App.4th 516, 537-38, 89 Cal.Rptr.3d 801 (2009)). Although Plaintiffs argue that the officers yelled confusing orders at Ms. Vasselin, the record demonstrates that the theme was consistent: drop the gun. Furthermore, the suggestion that the officers should have given Ms. Vasselin additional time to comply ignores the fact that she could have fired at them at any moment. Additionally, the officers’ placement of themselves behind pillars and drawing their weapons prior to approaching the house were reasonable safety precautions to cover themselves. See Duran v. City of *424 Maywood, 221 F.3d 1127, 1131 (9th Cir.2000) (“Although Plaintiffs are correct in pointing out that the officers had their guns drawn and did not announce their presence, these actions were entirely reasonable given that they were responding to a call that shots had been fired.”); Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.1994) (“It’s hardly unreasonable for officers to take arms, knock on the door of an apartment and identify themselves as police when an armed man who, they are told, recently fired shots and is acting ‘crazy’ lurks inside.” (footnote omitted)). Thus, the officers’ conduct clearly fell “within the range of conduct that is reasonable under the circumstances.” See Hayes, 160 Cal.Rptr.3d 684, 305 P.3d at 258.
Perhaps Ms. Vasselin did not realize that the individuals she was threatening were police officers, but this possibility does not alter the officers’ reasonable, if not compelled, belief that Ms. Vasselin was about to shoot them. The officers could reasonably have believed that Ms. Vasselin did know that they were the police. The undisputed evidence shows that the officers arrived in marked patrol cars and wore police uniforms. They knocked at the door. When Mr. Patterson appeared at the door with a gun, he obeyed their instructions, and the officers successfully disarmed him. When Ms. Vasselin emerged, Mr. Patterson was on the porch with his hands on his head. Neither Mr. Patterson nor Ms. Vasselin asked who the officers were or what they wanted. Thus, unlike Grudt v. City of Los Angeles, 2 Cal.3d 575, 86 Cal.Rptr. 465, 468 P.2d 825, 830-31 (1970), all of the circumstances support the officers’ reasonable belief that Ms. Vasselin knew that they were the police. Because Ms. Vasselin nonetheless advanced on them with a shotgun pointed in their direction, the officers’ use of deadly force was not negligent.
* * *
“We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that police[ ] face every day. What constitutes reasonable action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.” Martinez v. Cty. of L.A., 47 Cal.App.4th 334, 343, 54 Cal.Rptr.2d 772 (1996) (internal quotation marks omitted). I would hold that regardless of the officers’ pre-shooting conduct and Ms. Vasselin’s actual or apparent knowledge that she was facing police officers, given the immediacy and the deadly threat of harm posed and the lack of then available alternatives, they were justified in using deadly force. I respectfully dissent from the majority’s disposition to the extent that it holds otherwise.

. I concur in the memorandum disposition that the officers are protected by qualified immunity but would also hold that under these circumstances the officers were not deliberately indifferent as a matter of law, for the reasons explained herein.