**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESTATE OF CLEMENTE NAJERA AGUIRRE; J.S.; A.S.; Y.S., *Plaintiffs-Appellees*, v. COUNTY OF RIVERSIDE; DAN PONDER, *Defendants-Appellants*. | No. 19-56462 D.C. No. 5:18-cv-00762-DMG-SP OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted November 15, 2021
San Francisco, California

Filed March 24, 2022

Before: M. Margaret McKeown and Ronald M. Gould,
Circuit Judges, and Jane A. Restani,* Judge.

Opinion by Judge McKeown

---

*  The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

**SUMMARY**[**]

**Civil Rights**

The panel affirmed the district court's denial of qualified immunity to Sergeant Dan Ponder of the Riverside County Sheriff's Department in an action brought pursuant to 42 U.S.C. § 1983 alleging, among other things, that Ponder used excessive force in violation of the Fourth Amendment when he shot Clemente Najera-Aguirre six times without warning and killed him.

The panel first determined, as a threshold matter, that it had jurisdiction over this interlocutory appeal and that Ponder's characterization of the facts did not result in waiver of his qualified immunity defense.

The panel stated that police shootings, like all Fourth Amendment seizures, must be objectively reasonable—and when a suspect poses no immediate threat to an officer or others, killing the suspect violates his Fourth Amendment rights. Here, in dispute was the level of threat Najera posed immediately before he died. A key disputed fact was whether Najera was facing the officer and coming "on the attack," as Ponder contended, or whether Najera was turned away from the officer, as indicated by the coroner's report. Additionally, although eyewitnesses agreed that Najera was holding at least one bat-like object when he was shot, it was disputed how he held that object. Nothing in the record suggested that Najera was threatening bystanders or advancing toward them when he was killed. Based on

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Najera's facts, he presented no threat at all to the officer—or anyone else—in that moment.  The panel concluded that on interlocutory appeal, construing the evidence in favor of nonmovant Najera, Ponder's conduct was not objectively reasonable, and his use of excessive force violated the Fourth Amendment.

Because Najera's estate presented facts sufficient to establish a Fourth Amendment violation, the panel considered the second prong of qualified immunity: whether the law was clearly established.  The panel held that although no body of relevant case law was necessary in an "obvious case" like this one, this Circuit's precedent also put Ponder on notice that his specific conduct was unlawful.

## COUNSEL

Tony M. Sain (argued), Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California, for Defendants-Appellants.

Dale K. Galipo (argued) and Hang D. Le, Law Offices of Dale K. Galipo, Woodland Hills, California; Christian F. Pereira and Ian A. Cuthbertson, Pereira Law, Long Beach, California; for Plaintiffs-Appellees.

**OPINION**

McKEOWN, Circuit Judge:

Police shootings, like all Fourth Amendment seizures, must be objectively reasonable—and when a suspect poses no immediate threat to an officer or others, killing the suspect violates his Fourth Amendment rights. Here, an officer shot Clemente Najera-Aguirre ("Najera") six times without warning and killed him. In dispute is the level of threat Najera posed immediately before he died. That quintessential question of fact is reserved for the jury and precludes summary judgment on the excessive-force claim. We affirm the district court's denial of qualified immunity.

## I.   Background

On April 15, 2016, Sergeant Dan Ponder of the Riverside County Sheriff's Department received radio reports that someone in Lake Elsinore, California, was destroying property with a bat-like object, and had threatened a woman with a baby. Crucially, key facts are disputed in this summary judgment record: whether the officer saw bystanders bleeding; how close Najera stood to the bystanders; whether Najera was retreating from the property; and whether, as he interacted with observers and the police, Najera was holding his stick upright in a batter's position in an ostensibly threatening manner, or with the tip pointed down in a way that did not pose a threat.

Upon arriving, Ponder exited the patrol car with his gun drawn and confronted Najera. Ponder motioned for Najera to back away and demanded that he drop the stick. Najera did not drop it, and by some accounts verbally refused to do so. Ponder next tried to pepper-spray Najera, but the spray blew back in Ponder's face, and Najera appeared largely

unaffected.  Ponder pointed his gun at Najera and again ordered him to drop the stick, but Najera did not comply.  By some eyewitness accounts, Najera next retrieved a baseball bat from nearby bushes and advanced quickly toward Ponder with at least one weapon raised; other witnesses say Najera stood still, holding a single stick pointed down.  Whichever the case, Ponder, without issuing a warning, shot Najera six times from no more than fifteen feet away.  Najera died.

Ponder contends that Najera stood facing him during all six shots, but the coroner's report found that Najera died from two shots to his back.  The bullet paths suggested that Najera had turned *away* from the officer and was falling to the ground when the bullets struck.

Three of Najera's children (collectively, "the Najeras") sued Ponder and his employer, Riverside County, under 42 U.S.C. § 1983, alleging that Ponder violated the Fourth and Fourteenth Amendments.  Ponder and Riverside County moved for summary judgment.  The district court granted summary judgment on the claims against the county and on the Fourteenth Amendment claim against Ponder but denied summary judgment on the Fourth Amendment claim, thus denying Ponder qualified immunity.  Ponder asks us to reverse the district court's denial of qualified immunity.

## II.  Jurisdiction

As a threshold matter, we conclude that we have jurisdiction over this interlocutory appeal.  The Najeras argue that we lack jurisdiction because the district court found that triable issues of fact precluded summary judgment, and because Ponder waived his qualified-immunity defense by failing to present the facts in the light most favorable to the Najeras.  Both arguments miss the mark.  We "undoubtedly" have jurisdiction to consider the

district court's denial of qualified immunity. *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 707 (9th Cir. 2010). Likewise, Ponder's defense-friendly presentation of the facts does not deprive us of jurisdiction. Although Ponder's appellate briefing arguably "lapse[d] into disputing [plaintiffs'] version of the facts," we are fully capable of distinguishing between advocacy and the record itself. *George v. Morris*, 736 F.3d 829, 837 (9th Cir. 2013) (quoting *Adams v. Speers*, 473 F.3d 989, 990 (9th Cir. 2007)). Ponder's characterization of the facts did not result in waiver of his qualified-immunity defense.

## III.    Qualified Immunity

We now turn to the principal question on appeal: Whether qualified immunity shields Ponder from Najera's § 1983 claim. The purpose of 42 U.S.C. § 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Bracken v. Okura*, 869 F.3d 771, 776 (9th Cir. 2017) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)). The doctrine of qualified immunity—though absent from the text of § 1983—"acts to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Wyatt*, 504 U.S. at 168. As the architects of qualified immunity, courts must ensure that the doctrine remains tethered to this principle.

On interlocutory appeal, we review de novo the district court's denial of qualified immunity and view the facts in the light most favorable to the Najeras, the nonmovants here. *See Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021) (citations omitted). We then ask two questions: (1) "whether there has been a violation of a constitutional right;" and (2) "whether that right was clearly established at the time of the officer's alleged misconduct." *Lam v. City of Los Banos*,

976 F.3d 986, 997 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 77 (2021) (citation omitted). The answer to both questions here is "yes."

## A. The Constitutional Violation

Our touchstone in evaluating an officer's use of force is objective reasonableness. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)). The reasonableness standard "nearly always requires a jury to sift through disputed factual contentions," so summary judgment in an excessive-force case "should be granted sparingly." *Torres v. City of Madera*, 648 F.3d 1119, 1125 (9th Cir. 2011) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). The reasonableness of Ponder's conduct is assessed by balancing the "nature and quality of the intrusion" on Najera's Fourth Amendment rights against the government's countervailing interest in the force used. *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

The "nature and quality of the intrusion" here was undoubtedly extreme. *Id.* Deadly force is the most severe intrusion on Fourth Amendment interests because an individual has a "fundamental interest in his own life" and because, once deceased, an individual can no longer stand trial to have his "guilt and punishment" determined. *Garner*, 471 U.S. at 9. Before using deadly force, law enforcement must, "where feasible," issue a warning. *Id*. at 11–12. Nothing in this summary judgment record suggests that it was not "feasible" for Ponder to warn Najera before firing his weapon six times. *Id.* at 12.

Turning to the government's countervailing interest in the force, three factors inform our analysis: (1) the level of immediate threat Najera posed to the officer or others,

(2) whether Najera was "actively resisting arrest or attempting to evade arrest by flight," and (3) "the severity of the crime at issue." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8–9). Without doubt, the suspected crime in this case was severe, but that is the only *Graham* factor that weighs clearly in the officer's favor. Ponder does not contend that Najera was attempting to flee or evade arrest; quite the opposite, Ponder says that Najera was squarely facing him when all six shots were fired. This contention conflicts with forensic evidence. The coroner's report showed that Najera died from gunshot wounds to his back strongly suggesting he was turned away from Ponder rather than, as Ponder claims, facing him and coming "on the attack."

That leaves the "most important" *Graham* factor—and the central issue in this appeal—the level of threat Najera posed immediately before his death. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)). A key disputed fact is whether Najera was facing the officer and coming "on the attack," as Ponder contends, or whether Najera was turned away from the officer, as indicated by the coroner's report. Additionally, although eyewitnesses agree that Najera was holding at least one bat-like object when he was shot, it is disputed how he held that object. Nothing in the record suggests that Najera was threatening bystanders or advancing toward them when he was killed. Here, on Najera's facts, he presented no threat at all to the officer—or anyone else—in that moment.

In this scenario, the government's interest in the use of force did not justify the "unmatched" intrusion on Najera's constitutional rights. *Garner*, 471 U.S. at 9. Thus, we hold that, construing the evidence in favor of the Najeras,

Ponder's conduct was not objectively reasonable, and his use of excessive force violated the Fourth Amendment.[1]

## B.  The Clearly Established Inquiry

Because the Najeras have presented facts sufficient to establish a Fourth Amendment violation, we consider the second prong of qualified immunity: whether the law was clearly established.  The Supreme Court's recent decision in *Rivas-Villegas v. Cortesluna* is instructive.  As the Court explained, in an "obvious case," the standards set forth in *Graham* and *Garner,* though "cast 'at a high level of generality,'" can "clearly establish" that a constitutional violation has occurred "even without a body of relevant case law." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).  This is one of those obvious cases.

Deadly force is not justified "[w]here the suspect poses no immediate threat to the officer and no threat to others." *Garner*, 471 U.S. at 11.  Assuming that Najera posed no immediate threat to Ponder or others at the time of his death, this "general constitutional rule" applies "with obvious clarity" here and renders Ponder's decision to shoot Najera objectively unreasonable. *Hope v. Pelzer*, 536 U.S. 730, 741

---

[1] Ponder cites several cases in an effort to counter Najera's constitutional claims. *See e.g.*, *Bouggess v. Mattingly*, 482 F.3d 886, 896 (6th Cir. 2007); *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003).  However, those cases simply restate the uncontroversial proposition that using force against an immediately threatening suspect is generally reasonable, and Ponder sidesteps the baseline principle that at this stage of the proceedings, the facts must be construed in favor of Najera.

(2002) (quoting *United States v. Lanier*, 520 U.S. 259, 270–71 (1997)).

Although no "body of relevant case law" is necessary in an "obvious case" like this one, our precedents also put Ponder "on notice that his specific conduct was unlawful." *Rivas-Villegas*, 142 S. Ct. at 8. We emphasize that only cases that predate the incident are relevant to the "clearly established" inquiry. *City of Tahlequah v. Bond*, 142 S. Ct. 9, 12 (2021) (per curiam) (citation omitted). Two cases published about three years before the April 2016 incident, *Hayes v. County of San Diego* and *George v. Morris*, made "clear to a reasonable officer" that a police officer may not use deadly force against a non-threatening individual, even if the individual is armed, and even if the situation is volatile. *City of Tahlequah*, 142 S. Ct. at 11.

In *Hayes*, we held that police used excessive force when they fatally shot Hayes after encountering him inside his girlfriend's home holding a large knife pointed tip-down and standing six to eight feet away. *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1227–28 (9th Cir. 2013). We reasoned that the officers' use of deadly force was unreasonable because the evidence did not "clearly establish that Hayes was threatening the deputies with the knife," and because Hayes was not attempting to evade arrest. *Id.* at 1233, 1234. It was also "significant" that, like Ponder, the officers failed to warn Hayes before deploying deadly force. *Id.* at 1234–35. In *Hayes*, as here, officers, without warning, shot and killed an individual holding a weapon in a non-threatening manner. Indeed, the officers in *Hayes* were much closer to the individual than Ponder was to Najera when the shooting occurred. *Id.* *Hayes* stands as clearly established law that Ponder's actions were unconstitutional.

Similarly, in *Morris*, we held that it was unreasonable for officers responding to a domestic disturbance call to fatally shoot a suspect who emerged from his home onto his porch with his pistol pointed down.  *See George v. Morris*, 736 F.3d 829, 832–33, 839 (9th Cir. 2013).  While we were "clear-eyed about the potentially volatile and dangerous situation these deputies confronted," we could not conclude as a matter of law that the officers behaved reasonably by shooting the decedent "without objective provocation" and while "his gun [was] trained on the ground." *Id.* at 838–39.  Like the officers in *Morris*, Ponder entered a "potentially volatile" situation when he responded to the calls about Najera.  And we too acknowledge the difficult landscape facing Ponder and other offices responding to tense and often explosive situations.  Nevertheless, *Morris* established that, even in such situations, officers must not use deadly force against non-threatening suspects, even if those suspects are armed.

Ponder's response to these clearly established principles is to repeat his mantra that Najera posed an immediate threat to the officer or bystanders at the time of his death.  But Ponder can neither rewrite the facts to his own liking nor ignore the disputed evidence.  *See Adams*, 473 F.3d at 991 ("The exception to the normal rule prohibiting an appeal before a trial works only if the appellant concedes the facts and seeks judgment on the law.").  The posture of this interlocutory appeal coupled with clearly established law supports the district court's denial of qualified immunity.

## IV.    Conclusion

Critical disputes of fact render summary judgment premature.  We cannot assume the jury's role to resolve the disputed question whether Najera presented an immediate threat.  Accepting Najera's version of the facts—as we must

at this stage—the bedrock standards set forth in *Graham* and *Garner* and the factual similarity of *Hayes* and *Morris* put the officer's constitutional violation "beyond debate." *Rivas-Villegas*, 595 U.S. at ___, slip op. at 4.  We affirm the district court's denial of qualified immunity to Ponder.

   **AFFIRMED.**