[L.A. No. 30908. July 17, 1979.]

CYNTHIA MUNOZ et al., Plaintiffs and Respondents, v.
DEREK OLIN et al., Defendants and Appellants.

**COUNSEL**

Burt Pines, City Attorney, John T. Neville, Assistant City Attorney, and Daniel U. Smith, Deputy City Attorney, for Defendants and Appellants.

Manuel Lopez, Fielder & Fielder and Hugh B. Fielder for Plaintiffs and Respondents.

**OPINION**

**NEWMAN, J.**—Appellants are the City of Los Angeles and two arson investigators who shot and killed William Munoz in the early morning hours of May 19, 1973. Respondents are his widow and children, plaintiffs in this wrongful death action.

Several arson incidents involving commercial property in Munoz' neighborhood had been reported. On the night of the shooting defendants Olin and Halstead were staking out the area as arson investigators for the city, with the status of peace officers (Pen. Code, § 830.3, subd. (k), now § 830.3, subd. (j)). They testified that they intentionally shot Munoz as a suspected, fleeing arsonist.

Plaintiffs alleged both negligence and intentional tort. The judge instructed as to both theories. The jury returned a verdict for plaintiffs and found that Munoz' negligence contributed 35 percent to his death. The judgment for plaintiffs was reduced accordingly.

The issue is whether the jury verdict and the trial court instructions on negligence were erroneous. On a review of the record, we find substantial evidence to support a negligence theory and accordingly affirm the judgment.

### The Evidence

The incident occurred near the intersection of Alhambra and Warwick streets. Alhambra is a lighted, four-lane thoroughfare that runs generally east and west. A few houses are interspersed with buildings used by small businesses. Decedent's house was on the south side of the street, behind a grocery store operated by his wife's parents.

Behind the buildings that front on that side of Alhambra is a 20-foot-wide alley that parallels Alhambra. Most of the buildings have common walls. There are, however, walkways that permit access from the alley to Alhambra. One of those passages runs alongside the building where the Munoz family resided.

One of the businesses in the area was the Royal Upholstery Co., located about 250 feet east of the Munoz' back entrance. Along the alley at the rear of the businesses were doors providing access to the alley, which contained trash receptacles. The alley was illuminated by lights on the rear of the buildings.

From the evidence certain facts emerge as undisputed. There had been arson activity in the alley and nearby areas. Olin and Halstead were there seeking to apprehend an arsonist. Munoz, walking westerly in the alley on May 19, 1973, was at one point at the rear of Royal Upholstery's building. He proceeded from there down the alley, through a walkway to

the courtyard of his home and then through another walkway to Alhambra. He was shot by Olin and fell mortally wounded in the street where the walkway exited on Alhambra. Olin made a report of a fire, and fire engines responded.

The evidence most favorable to plaintiffs, which we must examine for sufficiency, fills in those undisputed skeletal facts as follows: On May 18 at about 7 or 8 p.m. Cynthia Munoz drove her husband to the home of a friend. He remained there until about 9:30 p.m. when he was driven by his brother to his parents' home. He remained there playing pool until about 1 a.m. when he returned to the friend's residence, which he left to go home at about 2:30 a.m. at the end of a television rock concert.

He walked with another friend, Carrera, to the corner of Warwick and Alhambra where Carrera lived. The walk took about five minutes. They talked for about 10 minutes, and Munoz then walked south on Warwick and turned west into the alley. At that point he was some 500 feet from his home. Traversing that distance he would have passed the rear of the Royal Upholstery building, about halfway between the alley entrance and the walkway to his home.

His wife was dozing and was awakened by Munoz' tapping on the window and calling her name in an ordinary voice. That was usual because he did not carry a key. As she walked to the kitchen to open the door she heard five or more shots fired. She also heard running feet and the words, "Get in the car, Jerry."

She hid the children in the bathroom. After five minutes or so she went to her parents' home across a courtyard to find out what had happened. She walked through the market in front of their home to where she could see out on Alhambra and there saw her husband's body lying in the street.

The parents testified that they were awakened by and heard four, five or more shots. Carrera also heard more than three shots. Plaintiffs' witnesses also testified that they heard no shouts or sirens and saw no indication of a fire until the fire engines arrived.

Munoz was killed by a bullet through the lungs and heart. The coroner testified that this sort of wound is almost immediately fatal. Two men driving east on Alhambra ran over Munoz' body without seeing it. They had not seen any activity along the street. They stopped their car, walked

back to the body and stood there for two or three minutes until defendants approached and told them their car had not killed him.

A watch taken from the body by the coroner was broken and stopped at 2:48. A fire at Royal Upholstery was reported at 2:54. The loading door at the rear of Royal Upholstery had been burned in the past. Fires occurred in the neighborhood both before and after May 1973.

Defendants' evidence explains the incident as follows: The nearby fire station had reported several fires in the area that appeared to have been deliberately set. Two autos had been set on fire in the alley in the past month. Defendants had information that those two had been started by the ex-partner of the proprietor of Royal Upholstery, to whom the cars had belonged. The ex-partner was reported to be armed and dangerous. Three other fires had occurred about 300 feet east of Royal Upholstery around 3 a.m. in late April and early May and involved the use of scrap wood.

On the morning in question about 2:30 a.m. Halstead and Olin took up a position in the alley where those three fires had occurred, at the southeast corner of Warwick and Alhambra. They waited in an unmarked car from which they had a view of the alley to the west. They were wearing plain clothes.

After about 15 minutes they observed Munoz walk south on Warwick, turn west into the alley, and approach the rear of Royal Upholstery, located about 300 feet from their car. They saw him pick up a bundle of material of about two feet by three feet from a large trash receptacle, place the material against a rear door of Royal Upholstery, and ignite it. Flames quickly reached a height of two-to-three feet.

Olin immediately radioed a report to the fire station and turned on the siren. Halstead turned on the headlights and drove rapidly toward Munoz, who ran. Defendants pulled alongside, yelled that they were police officers, and ordered him to stop. He continued to run.

Halstead headed the car into a wall to his right, attempting to trap Munoz, who then slipped between the fender and the wall and ran up the walkway alongside what was, coincidentally, his home. Olin got out of the car with gun drawn, followed partway by Halstead, both yelling at Munoz to stop. After a few feet Halstead returned and drove to the front of the buildings on Alhambra to head off Munoz in case he ran that way.

Olin reached a gate and saw Munoz in a lighted courtyard. He shouted, "Halt, police." When Munoz ignored the command Olin fired a shot over his head. He stopped, turned, and made a flinging motion with his arms. Olin said, "Stand still. Don't move."

Munoz, however, turned and ran toward the gate that led to Alhambra. He climbed the gate, and Olin fired two more shots. He went over the gate and out of sight, fatally wounded. Olin climbed the gate and continued to Alhambra where he saw a car run over an object he soon discovered to be Munoz' body.

The captain in charge of the fire station testified that four units responded to Olin's radio report of 2:54 a.m. The fire had burned through and up the height of the Royal Upholstery door and was impinging on the ceiling when it was put out.

### Substantial Evidence to Support a Negligence Verdict

Defendants do not dispute that an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect. In *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825] this court expressly so held. Nor do they dispute that negligence and intentional tort theories both may be available to a plaintiff in such a case. (*Grudt* at p. 586.)

However, defendants argue that negligence instructions were erroneous in this case because no substantial evidence supported a negligence verdict. They maintain that the only theory of liability available on the evidence was intentional tort; on that theory, they claim, defendants were not liable because the evidence conclusively showed that Munoz was an arsonist about to escape apprehension, so the killing was justified.[1]

---

[1]Defendants argue that their actions were privileged by virtue of Penal Code section 196: "Homicide is justifiable when committed by public officers . . . when necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest." (See also Pen. Code, § 835a as to lawful use of force by police officers.) The jury was, however, instructed on justifiable homicide as defined in section 196 and, by its verdict, necessarily rejected that defense. Contrary to defendants' contention, the evidence does not establish justifiable homicide as a matter of law. Since plaintiffs have not appealed and do not contend that the instruction prejudiced them, we need not address issues raised here as to the scope of the privilege to use deadly force.

We note also that plaintiffs have not questioned the jury's reduction of the award for contributory negligence.

Plaintiffs respond that their evidence showed that Munoz was not an arsonist and the defendants did not attempt to stop him in the alley but rather shot at him as he stood in his courtyard and as he ran from them through the walkway. They argue that it showed the officers' lack of care in identifying Munoz as an arsonist and in attempting to apprehend him.

The evidence relevant to negligence and intentional tort overlaps here and presents a case similar to *Grudt* v. *City of Los Angeles, supra,* 2 Cal.3d 575. Grudt was driving in a high-crime area shortly after midnight. Two plainclothes officers in an unmarked car tried to stop him by pulling up next to him, shouting, and showing their badges; but he attempted to elude them by driving on. When they saw him lean forward and reach under the front seat they became alarmed and radioed for help. Two other plainclothes officers saw him stop at a red light, approached his car, and rapped on the window with a loaded shotgun. The evidence conflicted as to whether he then accelerated his car toward one of the officers, but in any case they both shot at him. At trial evidence indicated that he was slightly hard of hearing, had no crime record, and had hidden his wallet containing $5 under the front seat.

This court held it was reversible error to exclude the negligence issue from the jury even though plaintiff also had pled intentional tort. The court pointed to the rule that a party may proceed on inconsistent causes of action unless a nonsuit is appropriate. Considered as a motion for nonsuit the exclusion motion failed in *Grudt* because there was evidence to support a verdict of negligence. "At the very least, the evidence favorable to plaintiff raised a reasonable doubt whether [the officers] acted in a manner consistent with their duty of due care when they originally decided to apprehend Grudt, when they approached his vehicle with drawn weapons, and when they shot him to death. . . . Therefore, the trial judge should have instructed the jury on both negligence and intentional tort theories and left it to their judgment to decide which, if either, was factually established." (*Grudt, supra,* 2 Cal.3d at p. 587.)

We find that in this case, too, substantial evidence was presented to enable the jury to find negligence on the part of the officers.

In reviewing for substantial evidence, we look at the evidence in support of the successful party, disregarding the contrary showing. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; 6 Witkin, Cal. Procedure (2d ed. 1971) § 249, p. 4241.) All

conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; 6 Witkin, *supra,* § 245, pp. 4236, 4237.) Weight of the evidence must be disregarded. (*Estate of Teel* (1944) 25 Cal.2d 520, 527 [154 P.2d 384].)

■ Considering the evidence in plaintiffs' favor to be true, the jury could have believed that Munoz spent the Friday evening in his usual manner with friends and went peacefully home along his usual alley route engaging in no criminal activity. Nothing in his background or in his activities that evening suggests an arsonist. After tapping on the window of his house on the walkway to awaken his wife, in his usual manner, he walked into the courtyard. The two investigators came down the quiet alley in an unmarked car. They stopped the car at the walkway where Munoz had turned and pursued him on foot. He was shot at in the courtyard. To escape the bullets he jumped over the gate and ran up the other walkway toward Alhambra. Olin followed and shot him as he ran into the street where he died almost instantly.

A jury taking that view of the facts could have found that under the circumstances the officers were negligent in identifying Munoz, the first man they saw in their rush, as the arsonist they had seen.[2] Testimony and a jury visit to the scene indicated that Royal Upholstery was 300 feet down the alley from the investigators' observation point, with telephone poles and trash receptacles in between. The jury could have found negligence in the failure adequately to warn Munoz and to attempt other means to apprehend him, if they disbelieved the investigators' testimony regarding their lights, siren and shouts as they drove down the alley. Munoz' wife, who was dozing under a window very near to the walkway entrance where defendants stopped their car, heard nothing but her husband's tap and calm voice at the window, followed by shots. Neighbors also testified that they heard shots but no sirens or shouts.

The jury also could have found negligence on Olin's part in interpreting the situation to require shooting at Munoz though Halstead could drive around to apprehend him on Alhambra, as indeed Halstead

[2]Though it is not required by plaintiffs' negligence theory to explain the fire, they argue that the jury might have believed that the officers started it to assure justification for the death they suddenly caused by shooting at a man they suspected as a potential arsonist or, perhaps, a burglar. Alternately, and perhaps more plausibly, the jury might have concluded that a still-unidentified arsonist (e.g., the Royal Upholstery ex-partner) was the man seen by the officers, who then erroneously assumed that Munoz, an innocent passerby, was he.

testified he did. They could have found Olin negligent in the way he used his weapon under the circumstances, particularly in view of plaintiffs' evidence that he fired not just three but several bullets.

As the court repeated in the similar *Grudt* case, " '[T]he actor's conduct must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law.' " (*Grudt* v. *City of Los Angeles, supra,* 2 Cal.3d 575, 587, quoting *Toschi* v. *Christian* (1944) 24 Cal.2d 354, 360 [149 P.2d 848].)

Because there is substantial evidence to support a finding of negligence, the trial court was correct in giving the negligence instructions and the jury's verdict will not be disturbed. In light of such a holding, we find no merit in defendants' other contentions.

The judgment is affirmed.

Bird, C. J., Tobriner, J., Mosk, J., and Richardson, J., concurred.

MANUEL, J.—I concur in the judgment under compulsion of *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575 [86 Cal.Rptr. 465, 468 P.2d 825].

Clark, J., concurred.