## FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHELSEY HAYES, a minor by and through her guardian ad litem,<br>　　　　　*Plaintiff-Appellant,*<br><br>v.<br><br>COUNTY OF SAN DIEGO, DBA San Diego County Sheriff's Department; et al.,<br>　　　　　*Defendants-Appellees.* | No. 09-55644<br>D.C. No.<br>3:07-cv-01738-DMS-JMA<br>S.D. CAL,<br>San Diego<br>ORDER CERTIFYING QUESTION TO THE CALIFORNIA SUPREME COURT and WITHDRAWING OPINION |

Filed June 14, 2011

Before: Alfred T. Goodwin and Johnnie B. Rawlinson, Circuit Judges, and Algenon L. Marbley, District Judge.*

---

# ORDER

This case requires us to decide, as a matter of California negligence law, whether law enforcement officers owe a duty of care in approaching a suicidal person as part of a welfare check. While we previously held there was convincing evidence that the California Supreme Court would not follow intermediate state appellate court decisions on this issue,

---

*The Honorable Algenon L. Marbley, U.S. District Court Judge for the Southern District of Ohio, sitting by designation.

Appellees requested in their petition for rehearing that we certify the issue. We now respectfully request that the California Supreme Court exercise its discretion and decide the certified question presented below.

## I.  Question Certified

Pursuant to Rule 8.548 of the California Rules of Court, we request that the California Supreme Court answer the following question:

> Whether under California negligence law, sheriff's deputies owe a duty of care to a suicidal person when preparing, approaching, and performing a welfare check on him.

The phrasing of the question set forth above should not restrict the California Supreme Court's consideration of the issues involved, and we understand that the court may reformulate our question. Cal. R. Ct. 8.548(f)(5). We will accept the decision of the California Supreme Court. Cal. R. Ct. 8.548(b)(2); *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1164 (9th Cir. 1995). Because it is unclear whether the California Supreme Court would follow the decisions of the California Courts of Appeal relevant to this issue, there is no controlling precedent. *See* Cal. R. Ct. 8.548(a)(2); *Emery v. Clark*, 604 F.3d 1102, 1120 (9th Cir. 2010); *Klein v. United States*, 537 F.3d 1027, 1032 (9th Cir. 2008). The California Supreme Court's decision on this question of California law could determine the outcome of this appeal. Cal. R. Ct. 8.548(a).

## II.  Factual and Procedural Background

On the night of September 17, 2006, Shane Hayes was shot and killed inside his home by San Diego County Sheriff's Deputies Mike King and Sue Geer. Hayes's minor daughter, Chelsey Hayes, subsequently filed suit against the deputies and the County of San Diego, alleging state and federal

claims stemming from the incident. Although the claims asserted each involve the deputies' use of lethal force, the question certified here relates exclusively to the deputies' pre-shooting conduct in the context of the claim to negligent wrongful death.

### A. The Deputies' Assessment of the Scene Before Confronting Hayes

Deputy King arrived at Hayes's residence at 9:12 p.m. in response to a domestic disturbance call from a neighbor who had heard screaming coming from the house. Hayes's girl-friend Geri Neill, who owned the house, spoke with Deputy King at the front door. During a three-minute conversation, Neill advised Deputy King that she and Hayes had been argu-ing about his attempt that night to commit suicide by inhaling exhaust fumes from his car. She told Deputy King that there had not been a physical altercation between them. Rather, Neill stated she was concerned about Hayes harming himself, indicating that he had attempted to do so on prior occasions.

Deputy King did not ask Neill about the manner of Hayes's prior suicide attempts and was unaware that he had previously stabbed himself with a knife. Although Neill advised Deputy King that there were no guns in the house, she made no indi-cation that Hayes might be armed with a knife. Hayes had been drinking heavily that night, but Deputy King did not asked Neill whether he was under the influence of alcohol or drugs. Deputy King also did not ask about Hayes's physical characteristics or if anyone else was in the house.

At 9:16 p.m., Deputy Geer arrived at the scene and was advised by Deputy King that there was a subject inside the house who was potentially suicidal. Based on the concern that Hayes might harm himself, the deputies decided to enter the house to check on Hayes's welfare. Deputy King testified their intent was to determine whether Hayes could "physically or mentally care" for himself.

Although the deputies had been sent a notification that Hayes was intoxicated, neither deputy checked for such a notification before entering the house, and both were unaware of this information. The deputies had also not checked whether there had been previous incidents involving Hayes and were unaware that he had been taken into protective custody four months earlier in connection with his suicide attempt involving a knife. Finally, the deputies did not discuss whether the department's Psychiatric Emergency Response Team ("PERT") should be called.

Upon entry, both deputies had their guns holstered. Deputy King was also carrying a Taser, although it was not ready for immediate use. While moving in the dimly lit house, Deputy King advanced ahead of Deputy Geer and was using his sixteen-inch flashlight, which he had been trained to use as an impact weapon.

Once in the living room, Deputy King saw Hayes in an adjacent kitchen area, approximately eight feet away from him. Because Hayes's right hand was behind his back when Deputy King first saw him, Deputy King testified that he ordered Hayes to "show me his hands." While taking one to two steps towards Deputy King, Hayes raised both his hands to approximately shoulder level, revealing a large knife pointed tip down in his right hand. Believing that Hayes represented a threat to his safety, Deputy King immediately drew his gun and fired two shots at Hayes, striking him while he stood roughly six to eight feet away from him. Deputy Geer simultaneously pulled her gun as well, firing two additional rounds at Hayes.[1] Hayes died as a result.

---

[1]Neill witnessed the shooting from behind Deputy Geer and testified that Hayes was walking towards the deputies with the knife raised at the time the shots were fired. She stated, however, that Hayes was not "charging" at the officers and had a "clueless" expression on his face at the time, which she described as "like nothing's working upstairs."

### B.   District Court Proceedings

Hayes's daughter asserted a claim for negligence based in part on the deputies' preshooting conduct, specifically their alleged failure to properly assess the situation before entering the house. She contends that the deputies created the situation that led to Hayes's death by confronting him without first determining the relevant circumstances of Hayes's prior suicide attempt involving a knife, his level of intoxication, the potential need for non-lethal force to subdue Hayes, or whether a PERT team should be called in. She seeks to present this evidence to a jury in support of her claim that the deputies' conduct breached the standard of care and contributed to his wrongful death.

The district court entered summary judgment in favor of the deputies on this claim. Relying on decisions from the California Courts of Appeal, *Adams v. City of Fremont*, 68 Cal.App.4th 243, 276 (1998) and *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1097 (2004), the district court found the deputies owed Hayes no duty of care in their preshooting conduct. The district court did not address whether the deputies' preshooting conduct could be considered a breach of any standard of care, if such a duty were owed.

### III.   Basis for Certification

This appeal turns on whether California negligence law imposes a duty of care on law enforcement officers in regards to their assessment and handling of a welfare check on a person known to be suicidal. In deciding an issue of state law, when "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007). There is no controlling precedent here because it is disputed whether the California

Supreme Court would follow relevant intermediate state appellate court decisions on this issue. *See Emery*, 604 F.3d at 1120; *Klein*, 537 F.3d at 1032.

The California Supreme Court has held that "an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Munoz v. Olin*, 24 Cal.3d 629, 634 (1979) (citing *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970). While this duty has been expressly applied to the use of deadly force, *see id.*, "[t]here remains an open question . . . whether an officer's lack of due care with respect to preshooting tactical decisions can give rise to liability for negligence." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009).

As noted by the district court here, however, at least two decisions by California Courts of Appeal have held that law enforcement officers owe no such duty of care. In *Adams*, a jury held police officers partially liable for the death of an intoxicated, suicidal man who shot himself, finding the officers negligently failed to gather sufficient information before confronting him and escalating the situation. 68 Cal.App.4th at 259-60. Relying upon factors outlined by the California Supreme Court in *Rowland v. Christian*, 69 Cal.2d 108, 112-13 (1968), the Court of Appeal reversed, holding that police officers owe no duty "to take reasonable steps to prevent a threatened suicide." 68 Cal. App. 4th at 275. The *Adams* court stated that:

> On balance, the relevant public policy considerations militate against imposing a legal duty on police officers to take reasonable steps to prevent a threatened suicide from being carried out. The foreseeability and certainty of harm suffered are factors which favor imposing a duty. The absence of moral blame, the remoteness of the connection between the conduct of [the police] and the harm suffered, the policy of preventing future harm, consequences to the com-

munity, the role of law enforcement in society, and the potential detriment to the public in imposing judicial allocation of resources all heavily favor shielding law enforcement personnel from tort liability in instances such as this.

*Id.* at 276.

Similarly, in *Munoz*, a jury found an officer had negligently handled a crisis situation involving an intoxicated, hallucinating woman armed with a knife, holding the officer partially liable for her death after he used lethal force to prevent her from stabbing her family members. 120 Cal.App.4th at 1083-93. Relying on the analysis in *Adams*, the Court of Appeal found that the trial court erred in allowing the jury to consider the officer's preshooting tactical decisions in evaluating negligence.[2] *Id.* at 1097-98. The *Munoz* court stated:

[As in] *Adams*, the need to protect the overall safety of the community by encouraging law enforcement officers to exercise their best judgment in deciding how to deal with public safety emergencies vastly outweighs the societal value of imposing tort liability for the judgments they make in emergency situations. *Adams* stands for the proposition that law enforcement officers are shielded from ordinary negligence claims based on their response to public safety emergencies when those efforts prove to be ineffective in preventing self-inflicted harm or harm caused by third parties. Applied to the present case, *Adams* means that the conduct of the police— Woodward's decisions as to how to deploy his officers at the scene, the efforts made in an attempt to defuse the situation as safely as possible, and other such factors—cannot subject appellants to liability.

---

[2]Nonetheless, the *Munoz* court held the error harmless, finding the verdict was supported by the jury's determination that the officer was negligent in his use of force. 120 Cal.App.4th at 1101.

*Id.* at 1077.

The California Supreme Court has not addressed these cases and has not directly ruled on the issue of whether officers owe suicidal persons a duty of care in emergency situations beyond the amount of force used.[3] "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Westlands Water Dist. v. Amoco Chemical Co.*, 953 F.2d 1109, 1111 (9th Cir. 1991) (quoting *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks omitted). "In undertaking this analysis, 'a federal court . . . is not free to reject a state judicial rule of law merely because it has not received the sanction of the state's highest court.' " *Katz v. Children's Hosp.*, 28 F.3d 1520, 1528-29 (9th Cir. 1994) (quoting *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982). "An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Estrella*, 682 F.2d at 817 (quoting *West v. A.T.&T. Co.*, 311 U.S. 223, 237 (1940)). Accordingly, the outcome of the question here would normally be dictated by the holdings in *Adams* and *Munoz*.

After the district court granted summary judgment, however, the California Supreme Court addressed whether law enforcement officers might be subject to negligence liability for certain preshooting conduct. *See Hernandez v. City of Pomona*, 46 Cal.4th 501, 515-22 (2009). In *Hernandez*, the court granted review to consider the following question: "When a federal court enters judgment in favor of the defen-

---

[3]The decision in *Adams* has been cited by two dissenting opinions issued by Justices of the California Supreme Court. *See Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 733 (2001) (Brown, J., dissenting); *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 507 (2001) (Werdegar, J., dissenting).

dants in a civil rights claim brought under 42 United States Code section 1983 . . . , in which the plaintiffs seek damages for police use of deadly and constitutionally excessive force in pursuing a suspect, and the court then dismisses a supplemental state law wrongful death claim arising out of the same incident, what, if any, preclusive effect does the judgment have in a subsequent state court wrongful death action?" *Id.* at 505. The court held "that on the record and conceded facts here, the federal judgment collaterally estops plaintiffs from pursuing their wrongful death claim, even on the theory that the officers' preshooting conduct was negligent." *Id.* at 506.

In doing so, the California Supreme Court did not hold that law enforcement officers owed no duty of care in regards to preshooting conduct, as the lower courts in *Adams* and *Munoz* had. Instead, the court found that the officers' specific preshooting conduct did not breach applicable standards of care. *Id.* at 515-22. In light of this conclusion, the court in *Hernandez* declined to address the officers' claim that "they owed no duty of care regarding their preshooting conduct." *Id.* at 521 n.18.

The court's extended analysis of whether the officers' preshooting conduct breached the relevant standard of care indicated, however, that it would likely not adopt the broad rule from *Adams* and *Munoz* that officers owe no such duty. *Id.* at 518-21. Indeed, in a concurring opinion, Justice Moreno argued that the court should not have reached the issue "because plaintiffs are entitled to amend their complaint to allege preshooting negligence." *Id.* at 522 (Moreno, J., concurring). The majority responded, stating "we find that plaintiffs have adequately shown how they would amend their complaint to allege a preshooting negligence claim, and that we must determine whether any of the preshooting acts plaintiffs have identified can support negligence liability." *Id.* at 521 n.18.

There is disagreement within this court as to whether this discussion in *Hernandez* suggests that the California Supreme

Court would not follow the holdings in *Adams* and *Munoz*. *Compare Hayes v. County of San Diego*, 638 F.3d 688, 697 (9th Cir. 2011), with *id.* at 702 (Rawlinson, J., dissenting). Accordingly, we believe the California Supreme Court should have the opportunity to speak for itself on the issue. *See Emery*, 604 F.3d at 1120; *Klein*, 537 F.3d at 1032. We would be grateful if the court would take that opportunity here, and grant our request to answer the certified question.

## IV. Administrative Information

If our request for decision is granted, we designate the County of San Diego as petitioner. *See* CAL. R. CT. 8.548(b)(1). The names and address of counsel for the County of San Diego, Mike King, and Sue Geer are: John J. Sansome and Morris G. Hill, 1600 Pacific Highway, Room 355, San Diego, California 92101-2469. The name and address of counsel for Chelsey Hayes is: Alvin M. Gomez, The Gomez Law Group, 8910 University Center Lane, Suite 5500, San Diego, California 92122.

In accordance with California Rule of Court 8.548, the Clerk of this court shall file the original and ten copies of this order, along with all briefs on appeal to this court and any record materials as requested, with the California Supreme Court. The Clerk shall also file certificates of service with the parties to this appeal. CAL. R. CT. 8.548(c), (d).

## V. Withdrawal of Opinion and Stay of Proceedings

In light of this court's decision to certify the issue presented here, the opinion filed in this case on March 22, 2011 and published at 638 F.3d 688 is hereby withdrawn. The petition for rehearing and petition for rehearing en banc is denied as moot. The case is ordered resubmitted for decision without further argument or briefing. All further proceedings in this case before our court are stayed pending final action by the California Supreme Court. The parties shall notify the Clerk

of this court within ten days after the California Supreme Court accepts or rejects certification, and again within ten days if the California Supreme Court renders an opinion.

This court retains jurisdiction over any further proceedings in this case.

**IT IS SO ORDERED.**