Filed 8/31/15  Estate of Hessler CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| Estate of JOHN DENNIS HESSLER, Deceased. | |
| SHAWNA MASSEY, as Executor, etc., | |
| Petitioner and Appellant, | C076166 |
| v. | (Super. Ct. No. CVPR11125) |
| TIMOTHY WADE HESSLER et al., | |
| Objectors and Respondents. | |

This appeal arises from a probate court order confirming decedent John Dennis Hessler transferred by quitclaim deed 22.5 acres of real property into his revocable trust shortly before he died.[1]  If the trial court correctly found the transfer to be valid, the real property was not part of John's estate when he died and not subject to the directions in his will.  John's will named his daughter, appellant Shawna Massey, as executor of his

---

[1]  Because several parties share the same surname, we refer to individuals in this case by their first names.

estate. In her capacity as executor, Shawna petitioned the probate court to determine title of the real property. Shawna also successfully sought a hardship discharge for the bankruptcy proceeding initiated for John's benefit while he was still alive. After the bankruptcy was discharged, John's other child, respondent Timothy Wade Hessler, recorded the quitclaim deed to the real property.

On appeal, Shawna contends (1) the trial court erred by failing to consider her argument that Timothy's recording of the deed constituted an untimely will contest after the limitations period on a will contest had expired, (2) Timothy and his sons, Shawn T. Hessler and Timothy J. Hessler (Timothy J.), lacked standing to participate in this probate action, and (3) John lacked capacity to execute the quitclaim deed given his non-verbal physical condition, the testimony of his attending physician, and the fact he executed two conflicting testamentary documents at the same time.

We conclude Shawna has not preserved for appeal the issue of the trial court's failure to rule on her argument that the recording of the deed constituted an untimely will contest. The record establishes Timothy, Shawn, and Timothy J. have standing in this probate action because the outcome determines whether they are beneficiaries of the land under the trust or whether the land is part of John's estate and subject to being sold to cover probate costs. In this judgment roll appeal, we conclude the evidence of John's testamentary capacity is not subject to attack. And the issue of John signing possibly conflicting testamentary documents has not been preserved for appellate review.

Timothy has filed a motion to sanction Shawna for a frivolous appeal. We deny the motion because this appeal is not frivolous and the record does not indicate it was taken solely for purposes of delay.[2]

---

[2] Although Shawn and Timothy J. join in the respondent's brief filed by their father, Timothy, they have not joined in the motion for sanctions also filed by their father.

BACKGROUND

Shawna has elected to proceed solely on a clerk's transcript. (Cal. Rules of Court, rule 8.121.) Thus, this is a judgment roll appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082–1083.) In the absence of a reporter's transcript or settled statement, we draw the facts from the trial court's findings after hearing.

John filed for Chapter 13 bankruptcy in 2010. On July 27, 2011, he was hospitalized after suffering a major stroke. In the hospital, John signed a will, a quitclaim deed, and a revocable trust on August 30, 2011. John died in the hospital on September 2, 2011, before his bankruptcy was discharged.

The parties stipulated John had testamentary capacity to execute the will. However, the parties contested whether John lacked capacity to form the intent to transfer the 22.5 acres of real property to his sister as trustee for John's revocable trust. On this issue, the court "heard testimony from several witnesses regarding the circumstances" of John's execution of his will, quitclaim deed, and revocable trust. In pertinent part, the trial court found:

"It is uncontroverted [that John] suffered a debilitating stroke [on] July 27, 2011 and that he remained hospitalized until his death on September 2, 2011. It is uncontroverted that [John's] speech was labored and his level of lucidity varied even within any given day.

"A Kaiser Roseville hospitalist and Internal Medicine physician, Robert Bruce Jobe, M.D., testified he examined [John] on the morning of August 20, 2011 for the first and only time for about 20 minutes. Dr. Jobe testified based on his training and expertise, patients who have suffered strokes of the severity of [John's] stroke would probably lack the cognitive ability to understand documents of such complex nature as the Will, Trust and Deed if they heard them read for the first time. However, he conceded that if the content of documents such as the Will, Trust and Deed were

3

consistent with a plan made prior to suffering a stroke, a patient in a state comparable to the state of [John] was more likely to be able to understand the meaning and effect of such documents, if s/he was having a good day.

"Dr. Jobe was questioned about nursing notes in [John's] file entered later on August 30, 2011, which seemed somewhat contradictory to his own recorded observations. He did acknowledge that stroke patients often have good and bad periods, as well as good days and bad days.

"Several family members testified [John] was responding well during the day and evening of August 30, 2011. They all, including [Shawna] described [John] to be in a particularly happy mood and quite responsive. [Shawna] testified she had spent much of the day at the hospital and that her father was 'fine', 'in good spirits', 'responsive' and 'having a great day' on August 30, 2011. Family members testified that he was able to whisper a few words that day.

"Several witnesses testified that for many years, it was known to them [that John] had always intended Shawna would get the money and [Timothy] would get the land.

"[John's] sister, Rosemary Kouretas, testified [John] nodded as [Timothy] Hessler read the documents. When [John] was asked if he understood the documents, Rosemary Kouretas testified, as did several other witnesses present, that [John] actually reached for the pen to sign each of the documents, though he needed [Timothy] to help steady the pen.

"[Timothy] testified, inter alia, the reason the land was quit claim deeded to Rosemary Kouretas as the Trustee of the John Dennis Hessler Revocable Trust, and not to him as the plan had always been, was because he was having tax problems and his father wanted the land to remain in the family for the family to use rather than be seized by the government to satisfy [Timothy's] tax problems.

4

"Based on the totality of the witnesses' statements and the credibility of the witnesses, as well as the fact that [Shawna] has stipulated that [John] was competent to execute the Will on August 30, 2011, the Court is satisfied that the Deed was signed and is consistent with the wishes of [John] and that [John] had the competency and capacity to form the intent, and had the intent, to deliver the Deed."

After the trial court received a certified copy of John's bankruptcy plan, the court rejected Shawna's claim the quitclaim deed conflicted with the bankruptcy proceedings. Specifically, the findings after hearing state: "Under Section VI. Miscellaneous Provisions of [John's] Bankruptcy Plan confirmed on December 29, 2010, the Court reads and finds '6.01 Vesting of Property' to mean the property of the bankruptcy estate revested to [John] on December 29, 2010 and therefore [John] was not in violation of the bankruptcy when he Quit Claimed his interest in the [real property] on August 30, 2010. Barring any contrary provisions in the plan, [John] had full authority to transfer the property as of that date, pursuant to 11 U.S.C. 1327(b)." (Underlining omitted.) Thus, the trial court concluded "the Quit Claim Deed signed by [John] on August 30, 2011, is a valid transfer of the [real property] to the [revocable trust]."

The trial court also rejected Shawna's argument Timothy, Shawn, and Timothy J. lacked standing. The court noted Timothy, Shawn, and Timothy J. were indisputably John's son and grandchildren. Thus, under Probate Code section 48, they are included among John's legal heirs.

DISCUSSION

I

***Whether Recording of the Deed Constituted an Untimely Will Contest***

Shawna contends the "trial court's failure to rule on the issue properly placed before it, i.e., that the recording of the deed was a time-barred de facto attack on the validity of the Will, . . . was an error that should be reviewed de novo." Although

5

Shawna presented the issue to the trial court for consideration, she did not respond to the trial court's written findings to point out the omitted issue. Consequently, the issue has not been preserved for appeal.

As the California Supreme Court has explained, "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. (*Aceves v. Regal Pale Brewing Co*. (1979) 24 Cal.3d 502, 507; *Munoz v. Olin* (1979) 24 Cal.3d 629, 635–636; *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925.) [Code of Civil Procedure s]ections 632 and 634 . . . set forth the means by which to avoid application of these inferences in favor of the judgment. When the court announces its tentative decision, a party may, under section 632, request the court to issue a statement of decision explaining the basis of its determination, and shall specify the issues on which he [or she] is requesting the statement; following such a request, the party may make proposals relating to the contents of the statement. Thereafter, under section 634, the party must state any objection he [or she] may have to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. The section declares that if omissions or ambiguities in the statement are timely brought to the trial court's attention, the appellate court will not imply findings in favor of the prevailing party. The clear implication of this provision, of course, is that if a party does not bring such deficiencies to the trial court's attention, he [or she] waives his [or her] right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment. Furthermore, section 634 clearly refers to a party's need to point out deficiencies in the trial court's statement of decision as a condition of avoiding such implied findings, rather than merely to request such a statement initially as provided in section 632.2

"The statutes thus describe a two-step process: first, a party must request a statement of decision as to specific issues to obtain an explanation of the trial court's

6

tentative decision (§ 632); second, if the court issues such a statement, a party claiming deficiencies therein must bring such defects to the trial court's attention to avoid implied findings on appeal favorable to the judgment (§ 634)." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 (*Arceneaux*), fns. omitted.)

In the written decision, the trial court listed the three issues to be decided: (1) standing; (2) delivery of the deed; and (3) the effect of the bankruptcy on the validity of the quitclaim deed transfer.[3] Shawna did not inform the trial court about any issues she believed were necessary for resolution of the case but omitted from the written decision. Consistent with *Arceneaux*, we conclusively presume the trial court properly considered and decided all of the issues implicit within the findings after hearing. (51 Cal.3d at pp. 1133-1134.) For this reason, we do not consider Shawna's contentions that the recording of the deed was after the expiration of the limitation period to contest the will and the expiration of the time to contest the will had the effect of ratifying the provisions in the will.

## II

### *Standing to Participate in the Probate Action*

Shawna contends the trial court erred in finding Timothy, Shawn, and Timothy J. had standing to participate in this probate case. She argues Timothy, Shawn, and Timothy J. "were not the proper parties to participate in this proceeding that sought, effectively, to transfer an asset to the alleged trust because they were not trustees."

---

[3] The trial court actually issued two decisions. The first decision filed on December 24, 2013, and entitled, "Ruling After Hearing" addressed the first two issues: (1) standing and (2) delivery of the deed. The second decision filed on February 5, 2014, and entitled, "Findings and Order" addressed the third issue: the effect of the bankruptcy on the validity of the quitclaim deed transfer. For ease of reference, we will refer to these two documents as the trial court's written decision.

Shawna asserts only Rosemary, the trustee of John's revocable trust, had standing to claim the real property was a trust asset and not part of John's estate when he died. We conclude the trial court did not err.

Under the Probate Code, "[a] party has standing to contest a will if that contestant is an 'interested person.' (§ 1043, subd. (a) ['An interested person may appear and make a response or objection in writing at or before the hearing']; *Estate of Lind* (1989) 209 Cal.App.3d 1424, 1430.)" (*Estate of Sobol* (2014) 225 Cal.App.4th 771, 781 (*Sobol*).) Probate Code section 48, subdivision (a)(1), defines an "interested person" who may participate in a probate action to include "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." Subdivision (b) of the same section provides that "[t]he meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

Under subdivision (b) of Probate Code section 48, a "probate court has flexibility in determining whether to permit a party to participate as an interested party. (*Estate of Prindle* (2009) 173 Cal.App.4th 119, 126; *Estate of Davis* (1990) 219 Cal.App.3d 663, 668.) The court in *Davis* explains: 'Subdivision (a) of section 48 does not purport to provide an exclusive list of recognizable interests. Rather, it permits the court to designate as an interested person anyone having an interest in an estate which may be affected by a probate proceeding. Subdivision (b) allows the court to determine the sufficiency of that party's interest for the purposes of each proceeding conducted. Thus, a party may qualify as an interested person entitled to participate for purposes of one proceeding but not for another.' (*Estate of Davis, supra*, 219 Cal.App.3d at p. 668; accord, *Estate of Prindle, supra*, 173 Cal.App.4th at p. 126.) Courts have given standing

8

to parties not specifically listed in section 48, subdivision (a)." (*Sobol*, *supra*, 225 Cal.App.4th at p. 782.)

For the beneficiary of a trust to appear in a probate proceeding as an interested person, the " 'beneficiary' must have ' "a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." ' " (*Sobol*, *supra*, 225 Cal.App.4th at pp. 782-783.) Here, the trust document signed by John shows Timothy, Shawn, and Timothy J. are all beneficiaries. Shawn and Timothy J. had an interest in the validity of the trust because they were named as beneficiaries to receive the real property transferred by quitclaim deed. Timothy and Shawna were named as beneficiaries for the residue of the trust estate.

As the trial court's decision establishes, Timothy, Shawn, and Timothy J. each had an interest in upholding the validity of the quitclaim deed and trust in order to avoid the real property from being devised by John's will. John's quitclaim deed and trust were intended to transfer the real property in such a way that the government would not seize the property in recompense for Timothy's "tax problems." Thus, the issues concerning the validity of the quitclaim deed and trust entitled the trust's beneficiaries -- i.e., Timothy, Shawn, and Timothy J. -- to participate in this proceeding.

Shawna "contends that the trial court abused its discretion by not issuing a clear ruling on whether [Timothy, Shawn, and Timothy J.] were appearing as beneficiaries of the will or the trust." We reject the contention. Probate Code section 48 does not require an election to proceed as a trust beneficiary or as an heir to the will. As both heirs to John's will and beneficiaries of his trust, Timothy, Shawn, and Timothy J. were interested in this probate proceeding and were not required to appear in only one capacity.

In sum, the trial court did not abuse its discretion in concluding Timothy, Shawn, and Timothy J. had standing to participate in this probate proceeding.

9

## III

### *John's Testamentary Capacity*

Shawna argues that "[t]he finding that [John] had capacity to deliver the deed should be overturned even under the abuse of discretion standard, given [John's] non-verbal physical condition, the testimony of his attending physician, and the uncontroverted fact that he executed two conflicting testamentary documents simultaneously." We reject the arguments.

### A.

### *Sufficiency of the Evidence*

The gravamen of Shawna's argument is that the record does not support the finding of John's capacity to execute the quitclaim deed. However, on a judgment roll appeal, we conclusively presume evidence at trial was sufficient to support the court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Thus, our review is limited to determining whether any error "appears on the face of the record." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521; Cal. Rules of Court, rule 8.163.) On the face of the record, nothing undermines the trial court's conclusion that "[b]ased on the totality of the witnesses' statements and the credibility of the witnesses, as well as the fact that [Shawna] has stipulated that [John] was competent to execute the Will on August 30, 2011," John had capacity to execute the quitclaim deed.

Shawna appears to assert John's testamentary capacity was refuted by Dr. Jobe's testimony that a person suffering a major stroke like John's "would *probably* lack the cognitive ability to understand documents of such complex nature as the Will, Trust and Deed." (Italics added.) Again, the nature of the record in this appeal means we conclusively presume the trial court properly resolved the evidence in favor of its decision. While Dr. Jobe testified John might not have had the requisite capacity

10

generally to understand complex documents such as a will, trust, and deed read to him for the first time, he also testified John was more likely to be able to understand the meaning and effect of the will, trust, and deed if the contents were consistent with the terms of an estate plan with which he was already familiar. Combined with witness testimony that John was having a "good day" when he executed the quitclaim deed and trust, the record supports the trial court's finding of requisite testamentary capacity.

**B.**

### *Conflicting Testamentary Provisions in the Will and Trust*

Shawna argues the trial court erred due to its "failure to even consider and rule on the most relevant facts properly pleaded and ripe for adjudication," namely that there were "conflicting testamentary provisions between the will and the trust." She further argues that given the material inconsistency between the will and the trust, the trial court erred because it did not address the issue of whether "John intended to transfer away his interest in the real property irrevocably." We reject these arguments because they have not been preserved for appeal.

As we explained in part I, a party cannot raise on appeal the issue of a trial court's omission of a legal issue or finding on a contested fact unless the party first brings such defects to the trial court's attention. (*Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134.) The record does not show Shawna responded to the trial court's findings after hearing by objecting or raising any issue she might have believed to have been improperly omitted. Consequently, the arguments regarding lack of findings and omitted issues are not reviewable.

### IV

### *Timothy's Motion for Sanctions on Appeal*

Timothy requests that this court sanction Shawna for filing a frivolous appeal.

11

Sanctions may be imposed on appeal. (Code of Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a).) However, sanctions are warranted "only when [the appeal] is prosecuted for an improper motive -- to harass the respondent or delay the effect of an adverse judgment -- or when it indisputably has no merit -- when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*).) "The two standards under *Flaherty* are often used together, with one providing evidence of the other." (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1295.)

Timothy asserts Shawna raises issues that cannot succeed in a judgment roll appeal, misstates evidence in the record, and does so for purposes of financial gain and delay. Thus, he urges us to conclude Shawna's appeal is frivolous and worthy of sanctions. We deny the motion for sanctions.

As the California Supreme Court has explained, "Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*Flaherty, supra*, 31 Cal.3d at p. 650.) The *Flaherty* court cautioned the use of sanctions may have "a serious chilling effect on the assertion of litigants' rights on appeal." (*Ibid.*) For that reason, the high court concluded, appellate sanctions should be imposed only in the clearest and most egregious cases. (*Id.* at pp. 650-651.) This is not a case warranting imposition of sanctions.

Shawna's opening and reply briefs properly present legal arguments for reversing the trial court's order. Her opening brief correctly articulates the three general standards of review and acknowledges she must demonstrate prejudice to secure a reversal. In support of her arguments, Shawna cites case law and statutes for her arguments. Her arguments acknowledge case law making her position more difficult to establish. And

12

she provides a statement of facts and procedural history that is coherent and generally adheres to the requirement of supporting factual assertions by record citations.

In his motion for sanctions, Timothy contends all of Shawna's arguments must fail because they represent attacks on the sufficiency of the evidence on a judgment roll appeal. However, as our resolution of Shawna's contentions shows, sufficiency of the evidence represents only part of our analysis for this appeal. Although sufficiency of the evidence challenges are foreclosed in this judgment roll appeal, the opening brief displays an awareness of the limitations of the record and attempts to raise issues subject to de novo review that are cognizable on a clerk's transcript alone.

Timothy characterizes Shawna's statement of facts as misrepresenting the facts of this case. Although Shawna's statement of facts does not perfectly adhere to the documents cited in the record, a comparison of her opening brief with the trial court's written findings reveals a general harmony between the two. Shawna's briefs are not misleading.

Finally, Timothy assigns improper motives of financial gain and delay to Shawna and her attorney. We note Shawna's contentions, as reflected in the trial court's decision and in her appellate briefing, are consistent with her duties as executor of John's will. In advancing her arguments on appeal, Shawna's briefing is free from personal invective and ad hominem attacks. As to delay, we note Shawna has not requested a single extension of time to file her briefs. Her contentions on appeal are substantive and properly supported, giving no indication this appeal was taken solely for purposes of delay. Accordingly, Timothy's motion for sanctions on appeal is denied.

## DISPOSITION

The order confirming the validity of the quitclaim deed signed by John Dennis Hessler on August 30, 2011, is affirmed. Costs on appeal are awarded to respondents

Timothy Wade Hessler, Shawn Thomas Hessler, and Timothy John Hessler.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      HOCH    , J.


We concur:


     RAYE    , P. J.


     MURRAY  , J.