NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JAN 27 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MATTHEW BISCOTTI and CHRISTIAN BISCOTTI,

    Plaintiffs - Appellants,

    v.

YUBA CITY; et al.,

    Defendants - Appellees.

No. 13-16238

D.C. No. 2:11-cv-01347-JAM-EFB

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted September 15, 2015
San Francisco, California

Before: CALLAHAN, CHRISTEN, and FRIEDLAND, Circuit Judges.

Plaintiffs Matthew and Christian Biscotti appeal the grant of summary

judgment in favor of Defendants on their Fourteenth Amendment due process and

California negligence claims arising out of the deadly shooting of Plaintiffs'

mother, Victoria Rogers-Vasselin, by Yuba City police officers on the doorstep of

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

her home. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

We reverse the district court's decision to strike the statement by Lionel Lonnie Patterson in his declaration, attesting that the officers failed to identify themselves as police prior to shooting Ms. Vasselin. The district court abused its discretion in determining that Mr. Patterson's statement lacked foundation, where evidence in the record showed that Mr. Patterson was physically present at the house during the entire sequence of events and stood between the officers and Ms. Vasselin when she was killed. *See* Fed. R. Evid. 701(a). The district court also improperly invaded the province of the jury to the extent that it relied on Mr. Patterson's intoxication at the time of the shooting to strike his statement. *Sabari v. United States*, 333 F.2d 1019, 1021 (9th Cir. 1964) (that witnesses were intoxicated does not render their testimony inadmissible). It was for the jury, not the court, to evaluate Mr. Patterson's intoxication in determining what weight to assign his testimony. *Id.*

We affirm the district court's grant of summary judgment in favor of Defendants on Plaintiffs' claim that the officers violated their liberty interests in the companionship of their mother under the Fourteenth Amendment's due process

2

clause. Police conduct shocks the conscience in violation of due process if undertaken with (1) deliberate indifference or (2) a purpose to harm unrelated to legitimate law enforcement objectives. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). Plaintiffs' claim fails under either standard. Under the former, the officers are protected by qualified immunity because no clearly established law at the time of their actions put them on notice that their pre-shooting conduct was in violation of due process. *See Pearson v. Callahan*, 555 U.S. 233, 243-44 (2009); *Mullenix v. Luna*, 136 S. Ct. 305, 308, 312 (2015) (per curiam) (officer not entitled to qualified immunity because "existing precedent" did not place the "constitutional question beyond debate") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Under the latter, there is no evidence in the record from which a reasonable jury could infer that the officers' "actions were undertaken to 'induce . . . lawlessness, or to terrorize, cause harm, or kill" Ms. Vasselin. *Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 855 (1998)) (alteration in original).

We reverse the district court's grant of summary judgment on Plaintiffs' negligence claim. Plaintiffs' pleadings incorporated into their negligence claim

factual averments about the officers' conduct leading up the shooting.[1]   Under the California Supreme Court's decision in *Hayes v. County of San Diego*, 305 P.3d 252 (Cal. 2013), the district court erred in declining to consider these pre-shooting circumstances in evaluating the officers' negligence.   "Law enforcement personnel's tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability."   *Id.* at 263.   This pre-shooting conduct is to be considered not in isolation but rather as "*part of the totality of circumstances* surrounding the fatal shooting."   *Id.* at 261; *see also Grudt v. City of L.A.*, 468 P.2d 825, 830-31 (Cal. 1970) (in bank) (considering officers' decisions about how to execute an arrest in evaluating the reasonableness of their ultimate use of deadly force).

The California Supreme Court has emphasized that consideration of the

---

[1] We therefore disagree with the district court that Plaintiffs' complaint failed to give Defendants fair notice that their negligence claim relied, in part, on pre-shooting conduct.   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Indeed Defendants conceded as much at the summary judgment hearing.

"totality of the circumstances surrounding any use of deadly force" under California negligence law "is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used." *Hayes*, 305 P.3d at 263 (internal citations omitted). Thus, acts that may not incur constitutional liability under the Fourth Amendment's "reasonableness" standard may be negligent under California tort law's "reasonable care standard." *Id.* at 262 (citing *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002)).

When the contested facts and inferences therefrom are viewed in Plaintiffs' favor, as they must be at the summary judgment stage, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the totality of the relevant circumstances in this case include not only the events that took place once Ms. Vasselin emerged on her porch with a shotgun in hand, but also the officers' pre-shooting tactical decisions that obscured their law enforcement identity and increased the likelihood of a violent and deadly encounter. Taken in the light most favorable to Plaintiffs, the sweep of relevant facts includes the officers' knowledge that their planned visit to the house would be after dark and that at least one occupant had been armed and intoxicated earlier that evening. The officers did not park in front of the house, where a marked car would have been visible, but instead approached from the side,

wearing dark uniforms and without announcing themselves as police officers. The officers stood behind pillars, further obscuring their law enforcement identity, and several of them shouted imperceptible orders at Ms. Vasselin when she opened the door. In the process, they failed to inform Ms. Vasselin that they would shoot if she did not comply with their commands.

Viewing the evidence as a whole, we conclude that there is a triable issue as to whether the officers' ultimate use of deadly force was reasonable under California negligence law. *See, e.g.*, *Grudt*, 468 P.2d at 830-31 (triable issue where plainclothes officers acted so as to make a driver think he was being robbed); *Munoz v. Olin*, 596 P.2d 1143, 1148 (Cal. 1979) ("failure [to] adequately . . . warn [decedent] and to attempt other means to apprehend him" supported jury's negligence finding); *George v. Morris*, 736 F.3d 829, 837-39 (9th Cir. 2013) (triable issue where plaintiff's version of the facts showed decedent did not pose an immediate threat when shot). In reaching this conclusion, we express no view on what the jury's verdict should be. Rather, we ask at this stage of the proceedings only whether a rational trier of fact could find that the officers failed to live up to their duty to exercise reasonable care. *See Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009). Because we find that question must be answered in the

affirmative, Plaintiffs are entitled to present their case to a jury.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

**Each party shall bear its own costs on appeal.**

*Biscotti v. Yuba City*, No. 13-16238

CALLAHAN, Circuit Judge, concurring in part, and dissenting in part:

I concur with the majority that the Patterson declaration should not have been struck, and that the officers are entitled to qualified immunity with respect to the Plaintiffs' § 1983 claim.[1]  However, I would also affirm the district court's grant of summary judgment with respect to the Plaintiffs' negligence claim.

Like federal courts evaluating Fourth Amendment excessive force claims, California also views "'reasonableness' of a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hayes v. County of San Diego*, 305 P.3d 252, 258 (Cal. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  "To do so, a court must pay 'careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013) (quoting *Graham*, 490 U.S. at

---

[1] I concur in the memorandum disposition that the officers are protected by qualified immunity but would also hold that under these circumstances the officers were not deliberately indifferent as a matter of law, for the reasons explained herein.

1

396). Courts also consider "under the totality of the circumstances, the quantum of force used, the availability of less severe alternatives, and the suspect's mental and emotional state." *Id.* (internal quotation marks and citations omitted). "All determinations of unreasonable force, however, must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (internal quotation marks omitted). The "most important" consideration is "whether the suspect poses an immediate threat to the safety of officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc) (quoting *Chew v. Gates,* 27 F.3d 1432, 1441 (9th Cir. 1994)).

Applying the considerations articulated above, the officers' conduct here was not negligent, even considering the pre-shooting conduct, because Ms. Vasselin posed an immediate, deadly threat to the officers. She unexpectedly appeared naked pointing a shotgun in the officers' direction. She ignored the officers' repeated instructions to drop the gun, and instead proceeded to advance towards them. The time from when Ms. Vasselin appeared with the shotgun to the time when the officers fired was about one minute. Thus, the officers did not have time to consider any less severe alternative means to protect themselves from the

2

danger posed.

Plaintiffs, however, contend there were alternative means available to the officers to avoid or diffuse the situation including having a better plan to communicate, providing more time for Ms. Vasselin to comply, standing in the open instead of hiding behind pillars, keeping their weapons holstered, contacting the residents by phone, waiting to approach the house until the morning, illuminating the porch, and identifying themselves as police clearly. But officers are not required to choose the "'most reasonable' action or the conduct that is the least likely to cause harm," so long as their conduct falls "within the range of conduct that is reasonable under the circumstances." *Hayes*, 305 P.3d at 258 (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537–38 (2009)). Although Plaintiffs argue that the officers yelled confusing orders at Ms. Vasselin, the record demonstrates that the theme was consistent: drop the gun. Furthermore, the suggestion that the officers should have given Ms. Vasselin additional time to comply ignores the fact that she could have fired at them at any moment. Additionally, the officers' placement of themselves behind pillars and drawing their weapons prior to approaching the house were reasonable safety precautions to cover themselves. *See Duran v. City of Maywood*, 221 F.3d 1127, 1131 (9th Cir. 2000) ("Although Plaintiffs are correct in pointing out that the officers had their

3

guns drawn and did not announce their presence, these actions were entirely reasonable given that they were responding to a call that shots had been fired."); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("It's hardly unreasonable for officers to take arms, knock on the door of an apartment and identify themselves as police when an armed man who, they are told, recently fired shots and is acting 'crazy' lurks inside." (footnote omitted)). Thus, the officers' conduct clearly fell "within the range of conduct that is reasonable under the circumstances." *See Hayes*, 305 P.3d at 258.

Perhaps Ms. Vasselin did not realize that the individuals she was threatening were police officers, but this possibility does not alter the officers' reasonable, if not compelled, belief that Ms. Vasselin was about to shoot them. The officers could reasonably have believed that Ms. Vasselin *did* know that they were the police. The undisputed evidence shows that the officers arrived in marked patrol cars and wore police uniforms. They knocked at the door. When Mr. Patterson appeared at the door with a gun, he obeyed their instructions, and the officers successfully disarmed him. When Ms. Vasselin emerged, Mr. Patterson was on the porch with his hands on his head. Neither Mr. Patterson nor Ms. Vasselin asked who the officers were or what they wanted. Thus, unlike *Grudt v. City of Los Angeles*, 468 P.2d 825, 830–81 (Cal. 1970), all of the circumstances support the

4

officers' reasonable belief that Ms. Vasselin knew that they were the police. Because Ms. Vasselin nonetheless advanced on them with a shotgun pointed in their direction, the officers' use of deadly force was not negligent.

*          *          *

"We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that police[] face every day.  What constitutes reasonable action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Martinez v. Cty. of L.A.*, 47 Cal. App. 4th 334, 343 (1996) (internal quotation marks omitted). I would hold that regardless of the officers' pre-shooting conduct and Ms. Vasselin's actual or apparent knowledge that she was facing police officers, given the immediacy and the deadly threat of harm posed and the lack of then available alternatives, they were justified in using deadly force.  I respectfully dissent from the majority's disposition to the extent that it holds otherwise.