**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUAN SOLIS-DIAZ, | No. 14-16402 |
| Plaintiff - Appellee, | D.C. No. 2:12-cv-00619-JAD-GWF |
| v. | |
| SCOTT TOMPKINS, Police Officer, Las Vegas Metropolitan Police Department, | MEMORANDUM[*] |
| Defendant - Appellant, | |
| And | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, | |
| Defendant. | |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted May 10, 2016
San Francisco, California

Before: NOONAN, WARDLAW, and PAEZ, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Las Vegas Metropolitan Police Department officer Scott Tompkins appeals the district court's denial of his motion for summary judgment in this 42 U.S.C. § 1983 action brought by Juan Solis-Diaz. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review a district court's denial of summary judgment de novo, *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010), viewing the facts and "draw[ing] reasonable inferences" in the light most favorable to the non-moving party "to the extent supportable by the record," *Scott v. Harris*, 550 U.S. 372, 378, 381 n.8 (2007) (emphasis omitted).

**1.** Excessive force claims are governed by the Fourth Amendment's "objective reasonableness standard," which requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 388, 396 (1989) (internal quotation marks omitted). "An officer's use of *deadly* force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). We must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the

2

scene," carefully considering "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Generally, "[t]he mere fact that a suspect possesses a weapon does not justify deadly force," though "threatening an officer with a weapon does . . . ." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1233 (9th Cir. 2013) (internal quotation marks omitted).

Viewing the evidence in the light most favorable to Solis-Diaz, Solis-Diaz was not committing any crime at the time of the incident, nor was he attempting to evade arrest. In addition, there is a genuine dispute of fact as to whether it was objectively reasonable for Tompkins to believe Solis-Diaz posed an immediate threat to himself or others, in part because it is unclear whether Solis-Diaz ever pointed his weapon at Tompkins.

While Solis-Diaz agreed that his gun raised "slightly" when he knelt to look out from beneath his garage door, Tompkins stated that when he saw Solis-Diaz

3

crouching down Solis-Diaz was "not point[ing]" his rifle at Tompkins. Instead, Tompkins stated that he could see the profile of Solis-Diaz's weapon. Solis-Diaz stated that when he stood up, he held his gun pointing "straight down" in his right hand. While Solis-Diaz initially responded to Tompkins's command to drop his weapon with profanity, he stated that he nevertheless promptly attempted to obey the command by lifting his left hand in the air palm out, and leaning over to place the gun on the ground with his right hand. Despite this apparent effort to surrender, Tompkins opened fire, shooting Solis-Diaz first in the hand and then in the upper left buttock as Solis-Diaz attempted to escape Tompkins's gunfire.

Because Solis-Diaz's mere possession of an assault rifle that he did not point at Tompkins would have been insufficient reason for Tompkins to utilize deadly force, *see id.* at 1233–34, we cannot conclude based on the above facts that Tompkins's use of deadly force was objectively reasonable as a matter of law.

In addition, even assuming it were reasonable to believe Solis-Diaz posed a threat to Tompkins, it is unclear whether it was objectively reasonable for Tompkins to continue firing at Solis-Diaz after he turned to flee. While it is true that once a deadly threat has been established, "officers need not stop shooting until the threat has ended," *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022 (2014), in this case, a jury could find that any perceived threat posed by Solis-Diaz ended as

soon as he (1) stood up and held his firearm in one hand pointed straight down toward the ground; (2) raised one hand in surrender while attempting to set down his gun with the other; or (3) raised both hands and turned to flee in an effort to escape Tompkins's gunfire. Whether Tompkins was reasonable in continuing to fire after these attempts by Solis-Diaz to surrender is thus a question of fact best left to a jury. *See Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (holding that summary judgment in excessive force cases should be granted sparingly).

2. Qualified immunity protects government officials from liability when their conduct does not violate clearly established constitutional or statutory rights. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The qualified immunity inquiry proceeds in two parts: (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right;" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 129 S. Ct. 808, 815–16 (2009).

Because we find that material issues of fact exist with regard to whether Tompkins's use of deadly force violated Solis-Diaz's Fourth Amendment rights, and these "unresolved issues of fact are also material to a proper determination of the reasonableness of [Tompkins's] belief in the legality of [his] actions," *Espinosa*, 598 F.3d at 532, we cannot determine whether Solis-Diaz's rights were

5

clearly established.[1]  Tompkins is therefore not entitled to summary judgment on the basis of qualified immunity.  *Pearson*, 129 S. Ct. at 815–16.

**AFFIRMED.**

---

[1]  For example, if a jury were to determine that Solis-Diaz objectively presented *no* threat to Officer Tompkins, and Officer Tompkins was objectively unreasonable in concluding otherwise, shooting at Solis-Diaz nine times and wounding him on his hand and buttock would violate clearly established law. *See, e.g.*, *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324–25 (9th Cir. 1991).  This case thus differs from *C.V. v. City of Anaheim*, No. 14-55760 (9th Cir. May 25, 2016), because here a jury could find that Solis-Diaz had already dropped his gun and raised his hands when Officer Tompkins fired, and thus presented no threat. Moreover, the only jury to have heard the two accounts presented here acquitted Solis-Diaz of having assaulted Officer Tompkins, albeit under a stricter standard of proof.